**OVERLAND SALES CO. et al. v. AMERICAN INDEMNITY CO.** (No. 8402.)

(Court of Civil Appeals of Texas. Galveston. Dec. 6, 1923.)

**1. Insurance ⊙⇒98—Acts of agent of assured or broker not binding on insurer.**

The act of one procuring insurance as the agent of the insurer are imputable to it, while those of one who either acts as the agent of assured, or in the capacity of a broker, are not; the broker representing the assured for the purpose of procuring the policy and the insurer, only in order to receive and transmit the premium.

**2. Insurance ⊙⇒539(5)—Failure to give notice of accident as required in policy held fatal to recovery.**

Under a liability insurance policy providing for immediate notice of any accident to insurer, a failure to give notice of an accident for more than 14 months after it occurred would be fatal to a recovery thereon.

**3. Insurance ⊙⇒668(2)—Question of agency held one of fact.**

Whether a person is the agent for the insured or the insurer, ordinarily, is a question of fact.

**4. Appeal and error ⊙⇒931(3) — Finding of fact deemed to have been made if evidence in statement of fact sufficient to support it.**

Where there are no findings of fact and conclusions of law in the record, if there be in the statement of facts sufficient evidence to support a particular finding, it must be deemed to have been made.

**5. Insurance ⊙⇒98—Facts held insufficient to show that firm procuring insurance were the agents of insurer.**

Where the firm to whom insured applied for liability insurance never had any authority to solicit or write insurance for insurer, and did not undertake to more than apply to its general agent for the policy which was countersigned only by the general agent, coupled with a provision in the policy that no person should be deemed an agent of the insurer unless authorized in writing, and the recognition by the insured in reporting an accident that the firm was his agent, *held*, that they were the agents of the insurer, at the most sustaining only the relation of brokers.

**6. Insurance ⊙⇒665(7)—Evidence held insufficient to show ratification of unauthorized agent's act.**

In an action on a liability insurance policy, evidence *held* insufficient to show a ratification by the insurer of the unauthorized acts of an assumed agent in receiving reports of an accident, where the first notice it had of the occurrence was more than 14 months after it happened.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by the Overland Sales Company and others against the American Indemnity

Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Vinson, Elkins, Wood & Pollard and Ball, Merrill & Ball, all of Houston, for appellants.

Fouts & Patterson, of Houston, for appellee.

GRAVES, J. Through the firm of Lea, Radford & Robinson, appellee issued to appellants, who were engaged in the automobile and garage business at a local stand in the city of Houston, its automobile garage liability policy of indemnity insurance No. 5815. Among others not deemed material, it contained provisions around which the controversy now at bar revolved as follows:

"*Indemnity for Loss.* (A) To indemnify the assured named and described in statement No. 1 of the schedule of statements forming part hereof, against loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries, including death at any time resulting therefrom accidentally suffered or alleged to have been suffered while this policy is in force by any person or persons, not employed by assured, by reason of:

"*Operations Covered.* (1) The maintenance and operation of an automobile salesroom, garage or station, including a repair shop, if any, located and described in said schedule of statements.

"(2) The ownership, maintenance or use of any automobile for any purpose, not hereinafter excluded, within the limits of the United States of America or Canada.

"*Defense.* (B) To defend in the name and on behalf of the assured any suit, even if groundless, brought against the assured to recover damages on account of such happenings as are provided for by the terms of the preceding paragraph.

"*Expense.* (C) To pay, irrespective of the limits of liability expressed in condition 13 hereof, all costs taxed against the assured in any legal proceeding defended by the company, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of said liability and the expense incurred by the assured for immediate medical or surgical relief as is imperative at the time of the accident, growing out of the in-
*Medical* vestigation of such an accident, the
*Aid.* adjustment of any claim, or the defense of any suit resulting therefrom.

"*Reporting Accidents, Claims and Suits.* (2) The assured, upon the occurrence of an accident, shall give immediate written notice thereof to the company's home office, at Galveston, Tex., or its agent duly authorized by law to receive the same, with the fullest information obtainable. He shall give like notice with full particulars of any claim made on account of such accident. If, thereafter, any suit is brought against the assured, he shall immediately forward to the company every summons or other process served upon him. The assured, when requested by the company, shall aid in effecting settlements, securing evidence, the attendance of witnesses and in prosecuting appeals. The assured shall not voluntarily assume any liability, settle any claim or incur any expense, except at his own cost, or interfere in any negotiation for settlement or legal proceeding without the consent of the company previously given in writing. The company reserves the right to settle any such claim or suit brought against the assured.

"*Recovery.* (3) No action shall lie against the company to recover for any loss under paragraph A (Indemnity for Loss), foregoing, unless it shall be brought by the assured for loss actually sustained and paid by him in money in satisfaction of a judgment after trial of the issue, and no such action shall lie to recover under any other agreement of the company herein contained unless brought by the assured himself to recover money actually expended by him. In no event shall any such action lie unless brought within ninety days after the right of action accrues, as herein provided."

"*Alterations in Policy.* 8. No erasure or change appearing in this policy as originally printed, and no alterations, change or waiver, of any of its terms, provisions, statements or conditions, shall be valid unless made by written indorsement attached hereto and signed by the president, or a vice president, and countersigned by a duly authorized agent of the company. Nor shall notice to or knowledge of any officer of the company, or of any agent or other person, received or acquired before or after the date of this policy be held to effect a waiver, change or alteration of any part of this contract.

"*Agents Defined.* 9. No person shall be deemed an agent of the company for any purpose whatever, unless he be authorized, in writing, for such purpose by the president or vice president of the company."

The policy bore date February 15, 1919, and was in force for a period of one year thereafter.

In this proceeding appellants sued appellee for damages for the alleged breach of this contract, charging that in November, 1919, Mrs. Lula Marquette sustained personal injuries while on a business visit to their salesrooms, afterwards sued them in the Fifty-Fifth district court to recover therefor on an allegation that their negligence had caused them, that her demand came clearly within the terms of the policy herein declared upon, and they demanded that appellee defend the same—as provided by the terms of the policy—but that it declined to do so; that thereafter, by way of an agreed judgment in her favor by the district court, they made a reasonable settlement with Mrs. Marquette for $2,000 and court costs, and also incurred an additional obligation of $750 for counsel fees in the matter, for all of which sums appellee wrongfully declined to reimburse them, to their damage in the aggregate of these items.

In answer, the appellee denied liability, pleading all the quoted provisions of the policy as to notice to it, as to voluntary assumption of liability or expense without its consent, and touching an action not brought

for a loss actually sustained and paid in satisfaction of a judgment after trial, alleging the breach of all of them, and further denying that the firm of Lea, Radford & Robinson were its agents, averring in this connection that it was never notified of the accident to Mrs. Marquette or of any claim thereunder until January 29, 1921, more than 14 months after it occurred, and that no copy of the summons or citation in her suit was ever at any time delivered to it.

Appellants, by supplemental petition, then claimed a waiver of the terms of the policy thus interposed by appellee, averring that it was estopped to rely upon them as a defense, or to deny that Lea, Radford & Robinson were its agents, by reason of the course of dealings concerning this policy and the Marquette transaction between that firm and appellee's general agent at Houston, A. D. Langham, which were detailed at much length. These supplemental matters were in turn denied by appellee.

The cause was heard by the court without a jury, judgment following that appellants take nothing and pay costs. They duly presented this appeal.

The uncontroverted evidence shows that appellants had all of their dealings concerning the entire subject-matter of this suit with the insurance firm at Houston of Lea, Radford & Robinson, who, in turn, up until January 29, 1921, had all of theirs with A. D. Langham at Houston, and that the first notice the American Indemnity Company at Galveston—the place of its home office—had of the accident to Mrs. Marquette was that contained in a letter to it of the date just mentioned, January 29, 1921, from Lea, Radford & Robinson, inclosing a report of the accident, which also bore the date of January 29, 1921, more than 14 months subsequent to the occurrence itself.

In these circumstances, the correctness of the trial court's judgment depends, as appellants themselves concede, upon whether or not the firm of Lea, Radford & Robinson at Houston were shown to be in fact such agents for the appellee of Galveston as to make notice to them imputable to and binding upon it, or at least to have dealt with appellants under such circumstances—with the knowledge, consent, and acquiescence of the appellee—as legally had the same effect and consequently estopped it to deny responsibility for their acts.

As the determination of this one question necessarily disposes of the merits of the appeal, no other need be passed upon.

[1] There is no difference between the opposing litigants as to the principles of law; the divergence being merely upon their application. It is well settled, as both sides agree, that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one who either acts as the agent of the assured or in the capacity of a broker are not; the broker being further held to represent the assured for the purpose of procuring the policy and the insurer only in order to receive and transmit the premium. 22 Cyc. p. 1427; Cooley's Briefs on Insurance, vol. 1, p. 68; vol. 3, p. 2532; Ins. Co. v. Blum, 76 Tex. 653, 13 S. W. 572; Ins. Co. v. Brown, 82 Tex. 631, 18 S. W. 713.

[2] There can further be no question under our authorities, we think, that a failure to give notice of an accident under such a policy as this for more than 14 months after it occurred would be fatal to a recovery thereon. Ins. Co. v. Scott (Tex. Civ. App.) 218 S. W. 53; Hefner v. Casualty Co. (Tex. Civ. App.) 160 S. W. 330, and Id., 110 Tex. 596, 222 S. W. 966.

[3] It has also been said, under circumstances not materially in that regard dissimilar to those here applying, that the question as to whether a person is the agent for the insured or the insurer is one of fact. Ins. Co. v. Josey, 6 Tex. Civ. App. 290, 25 S. W. 685.

[4] There are in this record no findings of fact or conclusions of law by the court below, so that, if there be in the statement of facts sufficient evidence to support a finding either that Lea, Radford & Robinson were the agents of appellants, or only brokers in their relationship to the appellee, it must here be deemed to have been made and the judgment affirmed. That there is such evidence seems to us clear. Here again we find no dispute, for there were no conflicts in the testimony upon any material points.

[5] For some time prior to and at the time of the application for the policy in suit, the appellee had been—through the procurement of others than the firm of Lea, Radford & Robinson—carrying for appellants the risk it covered; a policy between them to that effect being then outstanding with some months to run. By that time, through a gradual process with that ultimate result, appellants had turned over all their insurance business to the one agency of Lea, Radford & Robinson, and looked to it to supply their insurance requirements. Mr. Lea alone acted for his firm in all negotiations for and subsequent transactions relating to this policy, and the dealings with him exclusively with reference to it were not departed from, as above indicated, until January 29, 1921, when attorneys for appellants took the matter up direct with appellee at Galveston, by demanding that it defend the Marquette suit, the expected trial of which was then less than a week off.

The status of Mr. Lea's firm in the procurement of this contract was not that of an agency soliciting insurance generally for various companies, but rather that of one who, with exclusive handling of all the insurance business of his principals, was by them given specific instructions to procure

for them a certain particular policy from a named insurance company. This clearly appears, we think, from the facts given in evidence by Mr. Lea himself. He testified:

"My firm has done business with the Overland Houston Company and the Overland Sales Company. We handle their entire account, in the insurance business. We did have an application from that concern in February, 1919, for an insurance policy. It was what was known as a general liability garage coverage policy. * * * The policy that we delivered him on that application was not issued by our office. * * * We placed the business with Mr. Langham. We were doing considerable business with Mr. Langham and placed the business with him, in the American Indemnity Company at that time. In other words, the American Indemnity Company had been carrying the risk before we got hold of it, and their rates were cheaper than any other company carrying the business; so we had Mr. Langham write it in the American Indemnity Company of Galveston. * * *

"They came to us, the Overland people did, and said they wanted a policy of the character which was issued to them by the American Indemnity Company. We did not hold ourselves out to them as being an insurance company. We did not write the policies ourselves. * * * The Overland people did tell us to get them a policy. We have no right to write or issue American Indemnity policies ourselves, and are not authorized to write them. We do not hold a license from the state for the American Indemnity Company, no permit from the state of Texas. * * * So that, acting on their instructions to have a policy issued, we went to Langham and said, 'I want this policy in the American Indemnity Company,' and as general agent for the American Indemnity Company he issued that policy and turned it over to us and billed us for the premium, and we in turn delivered the policy to the Overland Sales Company and billed them for the premium and remitted it to Langham less the regular agent's commission. Our name did not appear on the policy at all, nor any of the signatures, except, as I stated before, our regular sticker was placed on the front of it. It was placed here, where we place stickers on all policies. * * *

"I did say on my direct testimony awhile ago that they said they wanted the American Indemnity Company on account of the rate; the company's name was mentioned. In other words, what I mean is, I could have placed it with any other company at the same rate, but they suggested this particular company because of the rate, and suggested that we get it, if we could, from the American Indemnity Company. That is my recollection of it. * * *

"We had an open order to give them (appellants) whatever insurance they needed; that is the idea, exactly. While we had the right to put it in any company we wanted to, nevertheless, we followed, where all things were equal, their preference."

Mr. Hero, the officer in appellant company who looked after all their insurance, testified:

"I went to Lea, Radford & Robinson, and I said, 'We want all of our insurance written at your office.' That is the sum and substance of it. And: 'Here is the American Indemnity Company policy; can you write it with them?' As to whether or not they were the agents of the American Indemnity Company, I did not know anything more about it than a jack rabbit does; I didn't know anything at all about it. But I did want to rewrite that insurance in the American Indemnity Company without loss to us, and they did it."

When the accident to Mr. Marquette occurred, it was reported, not to the appellee, but to Mr. Lea's firm, in the following manner, as shown in the testimony of Mr. Lovett:

"I called Messrs. Lea, Radford & Robinson's number, and Mr. Lea answered the phone. That call was put in 20 minutes after the accident. I told Mr. Lea, over the phone, the circumstances of the accident and told him to make notice in the usual way."

It is undisputed that the firm of Lea, Radford & Robinson never had any authority to solicit or write insurance for the appellee, and did not undertake to do more than apply to A. B. Langham, who was its general agent at Houston, for this. Moreover, the policy and its indorsements, in a number of places, was countersigned, "A. D. Langham, Houston," to all of which signatures was subjoined the recitation, "Authorized for the purpose," which, taken with the previously quoted provision that no person should be deemed an agent of the company for any purpose whatever unless thereunto authorized in writing, upon the face of the contract itself imported that Lea, Radford & Robinson were not the agents of appellee. There are also the added facts that appellee in the regular way billed Mr. Lea's firm for the premium, who in turn billed and collected it from appellants, retaining from it their commission, and that Mr. Lovett, in reporting the accident, did not do so to Mr. Lea as the agent of appellee, but rather as the representative of appellants, requesting for them that he "make notice in the usual way," evidently understanding that Mr. Lea must report somewhere else.

We think such evidence was sufficient warrant for a conclusion that Lea, Radford & Robinson were the agents of appellants in the matter, or at most that they sustained no closer relation to the appellee in reference to it than that of a broker. In neither contingency, under the authorities above cited, could appellee be bound by notice to them, or held responsible for acts of theirs not in comport with the requirements stipulated in its written contract.

[6] Under the facts recited, it is further clear that there is no evidence in the record raising an issue as to ratification by appellee of the unauthorized acts of Mr. Lea's firm in receiving reports of the accident, since it undisputedly appears, as before stated, that

the first notice it had of the occurrence was more than 14 months after it happened.

It follows from these conclusions that all assignments should be overruled and the judgment affirmed; that order has been entered.

Affirmed.