## ZURICH GENERAL ACCIDENT & LIA-BILITY INS. CO., Limited, v. FORT WORTH LAUNDRY CO.

### No. 12816.

Court of Civil Appeals of Texas. Fort Worth.

April 1, 1933.

McGown & McGown, B. E. Godfrey, and H. L. Logan, Jr., all of Fort Worth, for appellant.

V. R. Parker, of Fort Worth, for appellee.

CONNER, Chief Justice.

The appellant insurance company sued the appellee laundry company for the sum of $299.58, alleged to be due as unpaid premiums on a policy of insurance issued by the appellant company on the 12th day of October, 1929, and extending, as we infer, throughout the ensuing year. The policy in terms covered certain property and also bound the insurance company to compensate the employees of the laundry company in accord with the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.). The laundry company had numerous employees including drivers of its delivery trucks, but no separation or classification of the different character of employees appears on the face of the policy. The premiums for covering workmen were based on percentages of the pay roll of the employees, the policy providing, among other things, that upon each quarter of the year following its issuance the insurance company had the right to examine the books of the laundry company for the purpose of determining the amount of the premiums.

The evidence shows that one P. H. Edwards had been providing the laundry company with insurance for several years but that on the occasion in question, presumably upon the expiration of a previous policy, secured the policy in question from the appellant company, not generally represented by him. It is undisputed that all sums due as premiums under the policy, except those in question, were regularly paid, the deficiency in payment of premiums on account of the laundry drivers alone being involved in this suit.

The laundry company defended upon the ground that its drivers were not employees within the meaning of the policy but mere soliciting and delivery agents who were compensated by commissions upon charges made for work done and delivered and that the laundry company had at all times within the knowledge of Edwards refused to take out insurance covering such drivers and that Edwards knew at the time of soliciting the policy in question that the laundry company would not accept a policy covering insurance for such drivers' injuries.

The evidence further shows that Edwards at the time of applying for the policy in question failed to disclose the knowledge he had of the laundry company's previous refusal to receive policies covering its drivers and knew that the said company would refuse to knowingly receive a policy covering injuries to its drivers.

The evidence further shows that upon the issuance of the policy it was delivered to Edwards for delivery, who received the initial premium provided for in the policy which was by Edwards returned to and delivered to the general agency of the insurance company. The policy does not appear to have been read by the manager of the laundry company upon its delivery by Edwards and Edwards at the

time did not notify such manager that he had failed to inform the agent of the insurance company of the custom and refusal of the laundry company to cover its drivers. It further appears that after the delivery of the policy in accordance with the terms thereof, one or more auditors of the insurance company on several occasions applied to the laundry company for an audit of its books to determine the amount of the pay roll and the resulting sum due as premiums, and that upon each of these occasions such auditor was fully informed of the laundry company's refusal to pay premiums covering the pay roll of the drivers, notwithstanding which the insurance company continued during the life of the policy to receive and appropriate all sums due under the terms of the policy except the premiums now in controversy.

The case was submitted to the court without a jury and we have the trial court's findings of fact and conclusions of law before us which read as follows:

"1. I find that on or about the 12th day of October, 1929, the plaintiff caused to be executed, and delivered to the defendants T. E. Cloud and Newton E. Gambrell, composing the partnership of the Fort Worth Laundry Company, that certain accident and public liability insurance policy covering all of the employees of the Fort Worth Laundry Company, a partnership. The contract of insurance here referred to is the same as that shown in the stenographer's transcript of evidence.

"2. I find that the said policy above described was delivered to the Fort Worth Laundry Company, a partnership, and that N. E. Gambrell and T. E. Cloud at the time did not know that the policy that had been delivered covered chauffeurs and laundry drivers and did not know it did until the auditor for the plaintiff called their attention to it at the time he went to the said company to check up on the earned premium, at which time, I find, N. E. Gambrell notified said auditor that he did not order that kind of a policy and did not want that kind of a policy and had instructed the agent, Edwards, to that effect.

"3. I find that the chauffeurs and laundry truck drivers of the Fort Worth Laundry Company are employees of the Fort Worth Laundry Company.

"4. I find that provided, and in the event that the defendants are liable for the premiums by virtue of the policy, based upon the chauffeurs and truck drivers as well as other employees, that then and in such event they are liable to the plaintiff for unpaid premiums on the policy above described by agreement of parties plaintiff and defendant in the amount of Two Hundred Ninety-nine and 58/100 ($299.58) Dollars.

"5. I find that P. H. Edwards is a local insurance broker and as such was the agent and representative of the defendants, T. E. Cloud and Newton E. Gambrell, and was likewise agent of plaintiffs, in the procurement and delivery of the contract of insurance from plaintiff.

"6. I find that the agent, P. H. Edwards, has been repeatedly instructed by T. E. Cloud and Newton E. Gambrell not to procure a policy of insurance which would cover risk on chauffeurs and laundry truck drivers; that on numerous occasions prior to the purchase of the contract in question from plaintiff, defendants had refused similar contracts with other companies because same had covered chauffeurs and laundry truck drivers.

"7. I find that the agent, P. H. Edwards, requested the character and type of policy furnished by plaintiff without disclosing to plaintiff that he had been instructed by defendants not to include coverage for laundry drivers in said policy.

"Conclusions of Law.

"1. I conclude as a matter of law that P. H. Edwards was the agent of both plaintiff and defendants in procuring the insurance in question.

"2. I conclude as a matter of law that P. H. Edwards was acting within the apparent scope of his authority under both plaintiff and defendant in procuring the insurance in question.

"3. I conclude as a matter of law that the agent P. H. Edwards had no authority to procure insurance on the chauffeurs and truck drivers because he was specifically instructed not to procure insurance on such chauffeurs and truck drivers, and that therefore he could not bind the defendants T. E. Cloud and N. E. Gambrell by the purchase of the type of contract in question.

"4. I conclude as a matter of law that defendants T. E. Cloud and N. E. Gambrell are not liable to plaintiff for the sum of $299.58, which includes only claimed premiums on chauffeurs and laundry truck drivers."

 We have concluded that we cannot disturb the trial court's findings of fact and conclusions of law. The evidence, we think, is sufficient to support the trial court's findings that the broker Edwards was an intermediary agent of both parties, i. e., he was authorized as the agent of the insured to apply for the policy of insurance, and was given authority by the insurance company to deliver the policy and to collect and receive the initial premium due thereon and deliver it to the insurer. In the matter of receiving the premium and transmitting it to the insurer he was the agent of such insurer, and his knowledge, under well settled principles, must be imputed to the insurance company. The evidence, as we have stated, shows that the premiums due from and to be paid by the insured on its employees were not deter-

minable from the face of the policy but only upon a determination and enumeration of the number of insured employees. So that, at all times of the collection of the premiums by Edwards, it was necessary that appellant ascertain the number of insured's employees. This was true not only upon the receipt of the initial premium but also upon the collection of the quarterly premiums thereafter demanded and received by Edwards and appellant's auditors. Edwards, at all times prior to and during, and at all times subsequent to the application for and delivery of the insurance policy, knew that appellee's drivers were not to be and in fact were not classified as employees covered by the policy. The ascertainment and determination of the character and number of employees to be covered by the policy was committed to Edwards and appellant's auditors, and as to that element of the contract, they, and each of them, were evidently the insurer's agent and the insurer therefore was bound by its agent's knowledge relating to that phase of the contract. In this connection we venture to insert the following quotation from the case of Overland Sales Co. v. American Indemnity Co. (Tex. Civ. App.) 256 S. W. 980, 982: "It is well settled, as both sides agree, that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one who either acts as the agent of the assured or in the capacity of a broker are not; the broker being further held to represent the assured for the purpose of procuring the policy and the insurer only in order to receive and transmit the premium. 22 Cyc. p. 1427; Cooley's Briefs on Insurance, vol. 1, p. 68; vol. 3, p. 2532; [East Texas Fire] Ins. Co. v. Blum, 76 Tex. 653, 13 S. W. 572; [East Texas Fire] Ins. Co. v. Brown, 82 Tex. 631, 18 S. W. 713."

█ █ It seems clear that to that particular element or phase of the contract there was no such meeting of minds as was necessary to establish the contract upon which alone the insurer sued. It is also a familiar rule of law that where a contract is of doubtful meaning the court will give to it the construction the parties did, and evidently the continued demand for and receipts of premiums due other than upon the laundry drivers indicates that the insurance company and the laundry company both treated the policy as operative only upon subjects of the contract other than the wages of the drivers. At least such a course must be said to amount to a waiver on the part of the insurance company of its present demand. We might add that appellant company has, as a matter of fact, suffered no loss and its liability to compensate the drivers under the terms of its policy was suppositional only in view of the facts and that at no time has it ever been called upon to pay any sum on account of an injury of any kind to any of the laundry company's drivers.

We conclude that the trial court's findings of fact and conclusions of law should be adopted and the judgment affirmed.