**FOUNDATION RESERVE INSURANCE CO., Inc., Appellant,**

v.

**Ed S. WESSON, Appellee.**

No. 17326.

Court of Civil Appeals of Texas.

Dallas.

Oct. 24, 1969.

Rehearing Denied Nov. 21, 1969.

L. W. Anderson, Dallas, for appellant.

John H. McElhaney, Walter H. Dunlap, Turner, Rodgers, Winn, Scurlock & .Terry, Dallas, for appellee.

BATEMAN, Justice.

The appellee Ed S. Wesson, a local recording insurance agent, recovered from the appellant Foundation Reserve Insurance Company, Inc. a judgment for $1,032.-88, representing unearned premiums paid by him on behalf of some of his customers for automobile insurance policies issued by the appellant but which were soon thereafter cancelled by appellant. Appellant denies liability for the return of such premiums because it says it never received them. The controlling question, therefore, raised in varying phraseology by all seven of appellant's points of error, is whether payment of the premiums by Wesson to one V. G. Marshall was legally payment to appellant. Appellant says that Marshall was a mere broker without actual or apparent authority to act for it, while Wesson contends that Marshall was appellant's agent with actual, or at least apparent, authority to write the insurance for appellant and to collect the premiums and remit them to appellant.

There was no jury, and after rendering the judgment the court filed findings of fact and conclusions of law. The court found that appellant had supplied Marshall with insurance policy forms, and that some of the policies in question were typed thereon and validated in Marshall's office and some were typed and validated at the home office of appellant and sent to Marshall; that in either case Marshall sent each policy to Wesson along with a separate bill; that on prior occasions the parties had handled other automobile insurance business in the same manner, Wesson paying the premium to Marshall, and Marshall remitting same to appellant; that on the policies in question Wesson paid the premiums to Marshall in the same manner as before, but that Marshall did not transmit these premiums to appellant, whereupon appellant cancelled the policies; that Wesson at his own expense replaced the cancelled policies, obtaining from many of his customers assignments of their causes of action against appellant. The court further found that Marshall had actual authority from appellant to accept and transmit premium payments to it; that appellant also clothed Marshall with certain indicia of actual or apparent authority to act as its agent in billing for and collecting insurance premiums from Wesson, and that Wesson relied thereon in paying the premiums to Marshall.

The trial court concluded that Marshall had actual as well as apparent authority to bill for and collect the premiums and that his acts in doing so legally constituted payment to appellant, and that Wesson, by express written assignment and/or under the doctrine of subrogation, owns the cause of action and is entitled to recover.

If the record contains any evidence of sufficient probative force to support the judgment of the trial court, that judgment should not be disturbed on appeal. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97, 99 (1953). The findings of fact clearly support the judgment, and in determining whether those findings are supported by

any evidence of probative value we must give credence only to the evidence favorable to the findings, indulging all reasonable inferences to be drawn therefrom in favor of the findings and disregarding all evidence to the contrary. Brown v. Frontier Theatres, Inc., 369 S.W.2d 299, 301 (Tex.1963).

It appears without dispute that appellant was a New Mexico insurance corporation not licensed to do business in Texas, but that it did insure automobiles for Texas residents who had difficulty in placing their business with domestic companies. It did so through Texas insurance brokers. V. G. Marshall was such a broker residing in Fort Worth, Texas. He was licensed to place such business in non-admitted insurers pursuant to Article 21.38 of the Texas Insurance Code, in effect at the time of the transactions here involved.[1] Appellant supplied Marshall with a quantity of its blank policy forms and authorized Marshall to fill up the blank spaces in such forms, deliver the policies to the agent applying therefor, and collect and remit the premiums.

Wesson was a licensed local recording agent residing in Dallas, Texas. He was not licensed to place business in non-admitted carriers. From time to time his customers required insurance which could not be obtained from the companies regularly represented by him, and in such cases he would tender such business to brokers such as Marshall. Although Marshall wrote business in several non-admitted companies, Wesson specified that the several policies in question be placed with appellant because its rates were the most "attractive." He had had similar dealings with Marshall over a period of years. Marshall would either send the application to appellant, and when the policy was issued and returned to him he would send it to the local agent, such as Wesson, or he would simply issue the policy out of his own office and deliver it to the local agent, sending a copy to appellant. Under either method he would send Wesson a bill for the premium with each policy. He would also send Wesson a monthly statement of the total premiums thus accrued during the month. Appellant billed Marshall monthly for the premiums on all such business written in the preceding month. Wesson promptly paid all of Marshall's statements to him, less his commission and a special discount offered by Marshall to encourage prompt payment.

However, Marshall became insolvent and did not pay appellant the premiums for the policies in question, whereupon appellant cancelled them. Wesson then placed the business elsewhere and paid the premiums himself.

We hold that the question of agency is one of fact, and that agency and the extent of the agent's authority may be shown by circumstantial evidence. Fireman's Fund Indemnity Co. v. Boyle Gen. Tire Co., 381 S.W.2d 937, 938 (Tex.Civ. App., Waco 1964, reformed and affirmed 392 S.W.2d 352); National Guaranty Fire Ins. Co. v. King, 24 S.W.2d 501, 504 (Tex. Civ.App., Waco 1930, writ ref'd). We also hold that the above uncontroverted facts constituted sufficient evidence of probative value to support the findings and judgment of the trial court. Standard Fire Ins. Co. v. Buckingham, 211 S.W. 531 (Tex. Civ.App., Austin 1919, no writ).

The general rule is that while an insurance broker acts for the insured in making the application and procuring the policy, he acts for the insurer in delivering the policy and in collecting and remitting the premium. Couch on Insurance 2d, Vol. 3, § 25:92, p. 402, § 25:93, p. 404, § 25:94, p. 408, § 25:95, p. 409; East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S.W. 572, 575 (1890); East Texas Fire Ins. Co. v. Brown, 82 Tex. 631, 18 S.W. 713, 715 (1891); Zurich General Acc. & L. Ins. Co. v. Fort

---

1. Article 21.38 was repealed in 1967, its subject matter being now embodied in Article 1.14–2, Texas Insurance Code, V.A.T.S.

Worth Laundry Co., 58 S.W.2d 1058 (Tex. Civ.App., Fort Worth 1933, on rehearing 63 S.W.2d 236, no writ); Overland Sales Co. v. American Indemnity Co., 256 S.W. 980, 982 (Tex.Civ.App., Galveston 1923, no writ); Fuller v. Security Union Ins. Co., 37 S.W.2d 235 (Tex.Civ.App., Fort Worth 1931, no writ); and Gilbert v. Malan, 231 Mo.App. 469, 100 S.W.2d 606, 614 (Kansas City Ct. of App., Mo.1937), where it was said:

> "It is held by the authorities without dissent that, where an insurance broker is intrusted by the company with the delivery of a policy and the collection of the premiums thereon without any directions so to do by the insured, he is to be regarded as the agent of the company for such purpose."

See also Stuyvesant Ins. Co. v. D. C. Herndon & Co., 73 S.W.2d 543, 544 (Tex. Civ.App., Austin 1934, no writ), which was a suit, like this, for unearned premium, the insurer's defense being that the premium paid to its agent was never remitted to it, and the court said:

> "The payment of a premium to an agent authorized to issue policies and collect premiums is payment to the insurance company. This is true, although the agent does not forward the premium to the company, and though he converts the money to his own use."

Appellant contends that Marshall could not have been appellant's agent because the statute [2] prohibited appellant from doing business "by or through any person or agent acting within this State," and another statute [3] provides that a person can act as an insurance agent only after being "authorized so to do, by an insurance company or carrier having a permit to do business in this state." It is argued that since it would have been contrary to the statutory law for appellant to have an agent in Texas, or for Marshall to have acted as such agent unless authorized to do so by an admitted carrier, payment of premiums to Marshall was not payment to appellant and appellant was not liable for the return of the unearned portion thereof.

We do not agree with this argument. Appellant did in fact make Marshall its agent with authority to deliver the policies and to collect and remit the premiums to it. Appellant had been writing insurance for Wesson and his customers over a period of years, yet there was never any direct contact between them. Wesson dealt with appellant only through Marshall as its representative. Appellant never instructed Wesson to send the premiums directly to it, but acquiesced in the collection thereof by Marshall and did nothing to repudiate his agency until he became insolvent. Appellant will not be permitted to avoid its responsibility for the return of unearned premiums collected by its own agent on the ground that the law prohibited it from having such an agent. If appellant's conduct has been in violation of law (we do not hold that it has) it presumably will be called upon by the law to answer therefor, but it cannot on the premise of its own misconduct (we do not hold that it was

---

2. Section 2, of Article 21.38, Insurance Code of Texas, provided for the licensing of agents to place insurance in insurers not licensed to do business in Texas, and Section 3 was as follows:
   "Sec. 3. *Acts Not Permitted; Permissible Acts of Agents.*—Nothing contained in this article shall authorize any person, firm, association, or corporation to guarantee or otherwise validate or secure the performance or legality of any agreement, instrument or policy of insurance of any insurer not licensed to do business in Texas, nor to permit or authorize any nonlicensed insurer to do any insurance business by or through any person or agent acting within this State; but agents licensed hereunder acting pursuant to this article may issue and deliver to their clients, the insured, binders, policies and other confirmation of direct insurance so lawfully placed, and shall not be personally liable to the holder of any policy of insurance so issued or delivered for any loss covered by same."

3. Section 12, of Article 21.14, Insurance Code of Texas.

**440**

guilty of misconduct) escape the liability here asserted against it.

■ Neither do we agree with appellant's argument that the question of whose agent Marshall was is foreclosed by the words, "may issue and deliver to their clients, the insured," in Section 3 of Article 21.38, Insurance Code, quoted in footnote 2 of this opinion. We do not believe that the legislature intended by that language to establish a rule that in all cases and in all respects an excess line broker is always the agent of the insured and never the agent of the foreign unlicensed insurer.

We overrule all of appellant's points of error and affirm the judgment.

Affirmed.