UNITED SERVICE AGENCIES, Appellant,

v.

CONTINENTAL CASUALTY COMPANY, Appellee.

No. 19233.

Court of Civil Appeals of Texas, Dallas.

Aug. 10, 1977.

Waggoner Carr, Chris D. Harsdorff, Austin, for appellant.

William N. Hamilton, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellee.

AKIN, Justice.

United Service Agencies sued Continental Casualty Company for fraudulently inducing its entrance into an agency contract and for wrongfully terminating the contract. After Continental answered, United filed a motion for nonsuit. On the same day that United filed the motion for nonsuit, Continental filed a counterclaim seeking a declaratory judgment declaring the contract between the parties to be valid, including Continental's right to termination of the contract, and damages for United's failure to pay over a premium made to it as agent for Continental as required by the contract. The trial court granted United's motion for nonsuit, but retained jurisdiction over the counterclaim. Subsequently, a partial summary judgment was granted declaring that the contract was terminated pursuant to its termination provision and, after a trial the court rendered judgment for $1,033 against United on the counterclaim for damages. United appeals from the award of damages. We affirm.

*The Nonsuit*

United asserts that the trial court abused its discretion by refusing to dismiss Continental's counterclaim, which was filed subsequent to a motion for nonsuit on the original claim. Essentially, United argues that since the counterclaim was filed after Continental learned of its opponent's intention to move for nonsuit, the claim was filed in bad faith and should have been dismissed. We cannot agree. The right to nonsuit becomes absolute only after a motion for nonsuit is filed and brought to the attention of the court and opposing counsel; each of these conditions must be satisfied before the counterclaim is filed in order to force dismissal of the counterclaim as well as the original cause of action. *Loomis Land & Cattle Co. v. Diversified Mortgage Investors*, 533 S.W.2d 420, 423 (Tex.Civ. App.—Tyler 1976, writ ref'd n. r. e.); *Cape Oil Co. v. Williams*, 427 S.W.2d 122, 125–26 (Tex.Civ.App.—Tyler 1968, no writ); *Towell v. Towell*, 164 S.W. 23 (Tex.Civ.App.— Dallas 1914, no writ). Insofar as this record reflects, the motion for nonsuit was not brought to the attention of the court until November 29, 1976, twenty-five days after the counterclaim was filed on November 4, 1976. Thus, the record shows that the right to nonsuit became absolute only *after* the counterclaim was filed; therefore, the trial court's retention of jurisdiction over the counterclaim was proper.

Alternatively, United Services argues that even if the filing of the counterclaim was filed in time, it should still have been dismissed because it was filed in "bad faith." In this respect, United asserts that Continental Casualty's exploitation of the notice of nonsuit in order to preserve jurisdiction of its counterclaim is tantamount to "bad faith." We cannot agree. Although there is a requirement that a *nonsuit* be filed in good faith, *McCormick v. Hines*, 498 S.W.2d 58, 64 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd); *J. A. Walsh & Co. v. R. B. Butler, Inc.*, 260 S.W.2d 889 (Tex.Civ.App.—Waco) *writ ref'd w. o. j. per curiam*, 152 Tex. 601, 262 S.W.2d 952 (1953), there is no similar rule applicable to the filing of counterclaims. If a claim is filed in bad faith, such as for harassment, the proper remedy is to defend the action on the merits, and to counterclaim for an injunction against the filing of further harassing suits. *Renfroe v. Johnson*, 142 Tex. 251, 177 S.W.2d 600, 602 (1944). Thus, the remedy for the bad faith filing of a suit is *final adjudication* on the merits of the claim, and not an avoidance of the issue by dismissal without prejudice. The same rule, in our opinion, applies to counterclaims. Of course, if United had made no further appearance after filing its motion for nonsuit, service of process on the counterclaim would have been required, and the action would then have proceeded as if Continental had filed an original action. Consequently, bad faith even if established, would not be ground for dismissal.

*The Counterclaim*

The chain of circumstances underlying Continental's counterclaim began on June 1, 1974. On that date, United entered into an agency contract with Continental whereby it was authorized to sell and service insurance policies issued by Continental. Under this agreement, United was obligated to pay over the full amount of all renewal premiums it received to Continental, which in turn would pay the agency a commission on the collected premiums. After the contract was executed, Mrs. Annie V. Wall purchased hospitalization insurance with Continental through a subagent of United. The renewal date for the insurance was June 1, 1975, and the renewal premium was $837.11. Before the renewal date, however, Mrs. Wall forwarded a check, dated May 20, 1975, for $1,033.46. The check bore the notation "one year hospital insurance."

According to the counterclaim, United breached the agency contract by failing to pay this money over to Continental. United contends, however, that it was not obligated to forward the payment because the May 20 check actually represented the payment of a premium on a life insurance policy issued to Mrs. Wall by a different company. The premium due un-

der the life insurance policy was $1,033.46, the exact amount of the May 20 check. Under these facts, United argues that the rendition of judgment for Continental was against the great weight and preponderance of the evidence. We disagree. Since no findings of fact and conclusions of law were filed by the trial court, we must presume that the trial court found all facts necessary to support its judgment, if these presumed findings are supported by some probative evidence and are not so against the preponderance of the evidence as to be manifestly wrong. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.1968); *Johnson v. Buck*, 540 S.W.2d 393, 397 (Tex.Civ.App.—Corpus Christi 1976, no writ). In the present case, there is ample evidence to support a finding that the May 20 check was a renewal premium on the hospitalization policies issued by Continental, rather than a life insurance premium. Mrs. Wall's hospitalization policies with Continental were due for renewal on June 1, 1975, and prior to the renewal date, Mrs. Wall tendered her check for $1,033.46. The check bore the notation "one year hospital insurance." At trial, Jack Caldwell, a partner in United, testified that the application for life insurance, to which he contended the check applied, was actually dated August 20, 1975, *three months after the check was drawn.* Upon further examination, he testified that the life insurance application could not possibly have accompanied the check; in addition, Caldwell was unable to reasonably explain how the May 20 check could have been a premium on a life insurance application which was dated three months after the check had been paid. We conclude, therefore, that the trial court's presumed finding in support of its judgment was amply supported by evidence.

United also argues that since the check and life insurance application were part of the same transaction, the life insurance application should control any conflict between the instruments. We cannot agree because we do not accept the assumption that the two instruments were part of the same transaction. The trial court rejected this assumption when it rendered judgment

for Continental. To render judgment for Continental, the trial court necessarily had to find that the check was *not* a part of the life insurance transaction, but rather related only to the hospitalization policies issued by Continental. This finding is supported by the evidence, *supra.*

### Modification of the Judgment

As its final assignment of error, United contends that since the renewal premium on the hospitalization policies was $837.11, the trial court erred in rendering judgment for $1,033, the actual amount paid by Mrs. Wall. United urges us to modify the trial court's judgment and render judgment for $837.11. We cannot accept this argument. Since Continental is liable to the insured, Mrs. Wall, for any refund regardless of whether the agent actually remits the overpayments, United was obligated under its contract to remit to Continental the entire sum received from Mrs. Wall. The agency agreement reads: "*All* premiums, other than first premiums, shall be remitted to the company in gross on day received." [emphasis added]. As we read this language, the agent is required to remit the full amount of premiums received for the insurer's account, and he has no discretion to withhold remittances because of overpayment by the insured. The general rule is that while an insurance broker acts for the insured in making the application and procuring the policy, he acts for the insurer in delivering the policy and in collecting and remitting premiums. *Foundation Reserve Ins. Co. v. Wesson*, 447 S.W.2d 436, 438 (Tex.Civ.App.—Dallas 1969, writ ref'd); *East Texas Fire Ins. Co. v. Brown*, 82 Tex. 631, 18 S.W. 713, 715 (1891); 3 COUCH ON INSURANCE 2d, §§ 25:92–95 (1960). Accordingly, in a suit against an insurance company for the refund of unearned premiums, the company is liable despite its agent's failure to remit the unearned premiums. *Stuyvesant Ins. Co. v. D. C. Herndon & Co.*, 73 S.W.2d 543, 544 (Tex.Civ.App.—Austin 1934, no writ); *see Foundation Reserve Ins. Co. v. Wesson, supra* at 438–39. Since the insurer is liable

for the refund, it follows that the agent cannot defend against the insurer's claim merely on the ground that the insured has a paramount right to the unearned premium. *See* Restatement (Second) of Agency, § 417 (1958); Seavey, Law of Agency, § 161 (1964); 1 Mecham on Agency, § 1331 (2d ed. 1914).

Affirmed.