H.B. WEYANT and Linda Weyant,
d/b/a Weyant Containers,
Plaintiffs–Appellants,

v.

ACCEPTANCE INSURANCE COMPA-
NY, Defendant–Appellee.

No. 89–2566.

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1990.
Rehearing Denied Jan. 9, 1991.

Gordon L. Ginn, Ginn & Stults, Houston, Tex., for plaintiffs-appellants.

Patrick McCaffrey, Jr., H. Mark Burck, Wm. S. Bush, Houston, Tex., for defendant-appellee.

Before BROWN, WILLIAMS and JONES, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question in this case is whether a surplus lines agent may have authority in excess of that specifically set out in the Texas Surplus Lines Insurance statute. We hold that a surplus lines agent may have such authority. Accordingly, we reverse and remand.

The Weyants appeal the trial court's grant of summary judgment denying their claim against the Acceptance Insurance Company (Acceptance), the surplus lines insurer, because of the Weyants' reliance upon statements made by Southwestern Surplus Insurance Agency (Southwestern), the surplus lines agent of Acceptance. In light of Texas precedent, we conclude that a surplus lines insurer is not immunized from liability for the actions of its agent solely by virtue of the agent's status as a surplus lines agent. A surplus lines agent may be invested with authority beyond that spelled out in the agency contract with the surplus lines insurer, even though such authorized actions exceed those specified in the Texas Surplus Lines Insurance statute. Simply, any departures from a surplus lines agent's statutory authority do not categorically determine whether the agent acted outside the *full* scope of the agent's real authority. A surplus lines agent's actual authority, implied or apparent, may bind a surplus lines insurer just as efficiently as the agent's statutory and contractually expressed authority.

### Everything Was "Okay"

On May 17, 1983, the Weyants purchased three separate insurance policies (cargo, li-

ability, and collision) on their flatbed truck through Southwestern. The collision policy was underwritten by Acceptance, an out-of-state insurance company that was not authorized to do business in Texas. The Texas Insurance Code dictates that an unauthorized insurance company may provide insurance in Texas only through an independent surplus lines agent who has obtained a license to sell such insurance.[1] Thus, according to the Texas Insurance Code, by selling their policies through Southwestern, Acceptance was a "surplus lines insurer," and Southwestern was a "surplus lines agent." The other two policies obtained by the Weyants through Southwestern were underwritten by National Insurance Company. In order to purchase all three policies, the Weyants obtained financing through Auto Prem Plan (Auto Prem), an insurance premium finance company.

In September and again in December of 1983, the Weyants contacted Auto Prem and requested that Southwestern cancel all three policies. Southwestern responded to these requests by forwarding Notices of Cancellation on all three policies to the Weyants. The Notice of Cancellation for the collision policy with Acceptance stated that the cancellation of that policy would become effective on January 9, 1984. The Weyants contend that on January 4, after receiving this Notice of Cancellation from Southwestern, they instructed Auto Prem to apply the unearned premiums on the cancelled cargo and liability policies to the collision policy, and thereby "save" the collision policy from cancellation. No evidence was presented in the trial court as to whether Auto Prem received this request or if they had contacted Southwestern concerning this request.

The Weyants contend that on the next day, January 5, an employee of Southwestern contacted them and affirmed that the unearned premiums on their other policies would be sufficient to pay the premium on Acceptance's collision policy. Southwestern's employee assured the Weyants that

---

1. Tex.Ins.Code Ann. art. 1.14–2 (Vernon 1987).

everything was "okay" and that they could disregard the cancellation notice for their collision policy that was to take effect four days later on January 9. However, no written endorsement was ever attached to the collision policy showing that the cancellation notice had been retracted, nor did the Weyants ever receive any written notice that the stated cancellation of the policy had been retracted.

The Weyants' flatbed truck sustained collision damage on March 26, 1984. When the Weyants attempted to file a claim through Southwestern, they were informed by Southwestern that their policy had been cancelled on January 9, 1984, for nonpayment of premium. Because the policy was no longer in effect at the time of the accident, Acceptance refused to honor the Weyants' claim. On March 28, 1984, two days after reporting the loss, the Weyants received a check from Southwestern which represented a refund of the unearned premiums.

The Weyants do not contend that any direct employee of Acceptance ever made any representations to them of any nature. Rather, the Weyants claim that Southwestern was acting within the scope of its authority as an agent for Acceptance in retracting the notice of cancellation, thereby rendering Acceptance vicariously liable notwithstanding the misrepresentations of Southwestern. The Weyants sued for damages arising from these alleged misrepresentations pursuant to provisions of the Deceptive Trade Practices–Consumer Protection Act (DTPA).[2]

The Weyants brought claims against Auto Prem, Southwestern, and Acceptance in one suit in state court. Since the original filing of this action, the Weyants have dismissed their claim against Auto Prem. After Southwestern filed for bankruptcy, the state court severed the Weyants' claim against Southwestern from the one against Acceptance. Acceptance removed its case to federal court on diversity grounds.

The trial court ruled that the article in the Texas Insurance Code governing surplus lines insurance, Tex.Ins.Code Ann. art. 1.14–2 (Vernon 1987), rendered irrelevant the Weyants' testimony that Southwestern had stated that everything was "okay" and that they could disregard the Notice of Cancellation of the collision policy. The trial court characterized Southwestern's statements as reinstating the policy, and pointed to § 6(d) of art. 1.14–2, which provides that a surplus lines agent may not reinstate an insurance policy without prior written approval from the surplus lines insurer.[3] Section 6(e) of the same article directs the agent to deliver to the insured some kind of written document evidencing any change made to a policy.[4] The agency

---

2. Tex.Bus. & Com.Code Ann. § 17.41, *et seq.* (Vernon 1987).

3. Section 6(d) provides as follows:
   No surplus lines agent shall deliver any such document, or purport to insure or represent that insurance will be or has been granted by any unauthorized insurer unless he has prior written authority from the insurer for the insurance, or has received information from the insurer in the regular course of business that such insurance has been granted, or an insurance policy providing the insurance actually has been issued by the insurer and delivered to the insured.
   Tex.Ins.Code Ann. art. 1.14–2, § 6(d) (Vernon 1987).
   Viewing Southwestern's statements as reinstating the policy, the trial court also pointed to § 6(b), as the Weyants did not receive any written evidence from Southwestern that their policy had been reinstated. Section 6(b) provides:
   Upon placing a new or renewal surplus line coverage, the surplus lines agent shall

promptly issue and deliver to the insured or his agent, as the case may be, evidence of the insurance consisting either of the policy as issued by the insurer or, if such policy is not then available, a certificate, cover note or other confirmation of insurance.
   *Id.,* § 6(b).

4. Section 6(e) mandates:
   If after the delivery of any such document there is any change as to the identity of the insurers, or the proportion of the direct risk assumed by the insurer as stated in the original certificate, cover note or confirmation, or in any other material respect as to the insurance coverage evidenced by such a document, the surplus lines agent shall promptly deliver to the insured a substitute certificate, cover note, confirmation or endorsement for the original such document, accurately showing the current status of the coverage and the insurers responsible thereunder....
   *Id.,* § 6(e).

agreement between Acceptance and Southwestern also cautioned that Southwestern could not obligate Acceptance beyond the limitations set forth in the agency agreement.[5]

Assuming that a Southwestern employee made the assurances as contended by the Weyants, and viewing these assurances as reinstating the policy, it is undisputed that Southwestern never obtained prior written approval from Acceptance to reinstate the collision policy, nor did any written document evidence the change. Consequently, the trial court determined that if Southwestern made such assurances, it acted outside its statutory and contractual authority. Because a principal may only be held liable for the representations made by its agent while acting within the scope of the agent's authority, *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex.1981), the trial court granted summary judgment for Acceptance.

*Standard of Review for Summary Judgment*

■ In reviewing the grant of summary judgment, this court addresses the motion for summary judgment *de novo. Walker v. Sears Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). This court then considers all the facts contained in the pleadings, depositions, admissions, answers to interrogatories, affidavits, and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984).

However, to hold that summary judgment was improvidently granted, this court must find that a "genuine issue for trial"

exists, not just a mere factual dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). In order to reach this level, the party opposing the motion may not sit on its hands, complacently relying upon the pleadings. The Supreme Court has mandated that the nonmovant must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986). Where the evidence on record before the court could not lead a rational trier of fact to return a verdict for the non-movant, there is no "genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

■ Here, the Weyants did indeed go beyond the pleadings to prove the existence of a "genuine issue for trial." The agency agreement between Acceptance and Southwestern entered into evidence explicitly provides that the cancellation of policies is within the agent's discretion.[6] This fact is especially significant considering that because Southwestern's assurances were made *prior* to the effective date of cancellation, these statements served to retract the cancellation, rather than to renew or reinstate the policy. While the appellant, appellees, and the trial court all phrased Southwestern's statements as "reinstating" the policy, this nomenclature is incorrect. By saying that everything was "okay" and instructing the Weyants to disregard the Notice of Cancellation, Southwestern would not have been issuing the Weyants a new policy or making any changes to the existing policy. Rather,

---

**5.** Clause 11 of the agreement states:
 The Agent shall not obligate the Company beyond the limitations set forth herein or as specified in instructions issued by the Company, either orally or in writing, or alter, modify, waive or change any of the terms, rates or limitations of the Company's policies....

**6.** The agreement states in the second clause:
 "... to cancel such policies is the discretion of the Agent, where such cancellation is legally possible...."

Southwestern was simply retracting the Notice of Cancellation on a policy that Acceptance had already issued and approved.

This is not a matter of mere semantics. If Southwestern's actions did not constitute issuing a "new or renewal" policy, then § 6(b) of art. 1.14–2 [7] would not specifically preclude the agent's retracting the Notice of Cancellation. If Southwestern effected no actual changes to the policy, then § 6(e) of art. 1.14–2 [8] and the restriction on changes delineated in the Weyants' policy [9] are not implicated. If Southwestern had discretion in deciding whether to cancel a policy, then a rational trier of fact could find that Southwestern had at least the implied or apparent authority, if not the express authority to retract such a cancellation.

### Apples and Oranges, or Just an Irrelevant Distinction?

■ Drawing the inference most favorable to the Weyants, we assume that a Southwestern employee did indeed make the assurances as stated by the Weyants. If Southwestern's acts fall within the pale of its authority as Acceptance's agent, then any representations made by Southwestern can be imputed to Acceptance. *Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562, 585–86 (Tex.Ct.App.1983). Therefore, this case turns upon the determination of the actual scope of Southwestern's authority as a surplus lines agent.

In granting summary judgment for Acceptance, the trial court first categorized Southwestern as a surplus lines agent, a fact uncontroverted. The court then looked no further than the scope of a surplus lines agent's authority as provided in art. 1.14–2 [10], and the scope of Southwestern's express authority as found in the language of the collision policy issued to the Weyants.[11] The court determined that

if Southwestern's employee did indeed make these assurances, and they are viewed as reinstating the Weyants' collision policy, then Southwestern clearly strayed off the path of its statutorily prescribed authority as a surplus lines agent.[12] In addition, by making these statements, Southwestern would have crossed the boundaries of the specified authority granted to it in its agency agreement with Acceptance. The trial court ended its inquiry here, without giving consideration to the evidence of the Weyants' dealings with Southwestern and the effect that Southwestern's actions and duties might have on the Weyants' perception of Southwestern's authority.

In essence, the trial court reached its conclusion by applying the facts of this case to a logical "if x, then y" theorem. While such an equation will undoubtedly produce quick and clean results, the crucial factor of a surplus lines agent's implied or apparent authority has not been figured into the final determination. This deficiency is glaringly apparent here, as neither art. 1.14–2 or the terms of the agency agreement between Acceptance and Southwestern specifically address whether Southwestern has the authority to retract a Notice of Cancellation. Texas courts, on the other hand, have not utilized such a rigid standard when determining the scope of a surplus lines agent's authority.

In both *Foundation Reserve Ins. Co. v. Wesson*, 447 S.W.2d 436, 438 (Tex.Civ.App. 1969), and in *Bellefonte*, 663 S.W.2d at 585–86, Texas courts considered the extent of a surplus lines agent's authority without solely limiting their discussion to contractual and statutory limitations upon the agent. Instead, the court determined that the cumulative effect of the agent's actions and duties marked the boundaries of a surplus agent's authority, and thus the extent of the unauthorized insurer's liability. *See*

7.  *See* note 3, *supra*.

8.  *See* note 4, *supra*.

9.  The policy reads at page 7: "nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy."

10.  *See* note 1, *supra*.

11.  *See* note 9, *supra*.

12.  *See* art. 1.14–2, *supra*, note 1.

*Foundation*, 447 S.W.2d at 438; *Bellefonte*, 663 S.W.2d at 585–86. In both cases, even though an agent had performed duties for an unauthorized insurer, the court did not wield the limitations of the agent's specific contractual authority and art. 1.14–2 to cut off the unauthorized insurer's liability. *See Foundation*, 447 S.W.2d at 438; *Bellefonte*, 663 S.W.2d at 585–86.

In *Bellefonte*, the agent was the surplus lines agent for an unauthorized insurer who claimed that the agent was merely an insurance broker, and did not have the full authority of a local recording agent. *Bellefonte*, 663 S.W.2d at 585. However, contrary to the trial court in the case at hand, the point of departure for the *Bellefonte* court's assessment of the agent's authority was not the agent's status as a surplus lines agent. Rather, the court evaluated the duties that the agent performed for the surplus lines insurer to determine the scope of the agent's authority. *Id.* at 585–86. These duties included assisting in the risk evaluation of the insured, providing specific policy forms concurrent with the other insurance policy forms held by the insured, collecting premiums for the surplus lines insurer, and delivering the policy to the insured. *Id.* at 586. The court found that the aggregate effect of these duties established a principal-agent relationship between the surplus lines agent and the unauthorized insurer. *Id.* Consequently, the unauthorized insurer was charged, as a matter of law, with notice of all of the agent's acts in question and with all knowledge acquired by or given to the agent. *Id.* at 585–86. Interestingly enough, art. 1.14–2 never factored into the *Bellefonte* court's determination.

In *Foundation*, the agent was licensed to sell insurance for an unauthorized insurer under the statutory provision that is now embodied in art. 1.14–2. *Foundation*, 447 S.W.2d at 438. The unauthorized insurer sought to avoid responsibility for the agent's failure to remit premiums. *Id.* Again, unlike the trial court in the case at hand, the court did not first categorize the agent into a particular specie manifested in the Insurance Code. Instead, the court pointed out that the surplus lines insurer had supplied the surplus lines agent with its blank policy forms and had authorized the agent to "fill up the blank spaces in such forms, deliver the policies to the agent applying therefor, and collect and remit the premiums." *Id.* After chronicling these duties, the court applied them to the standard that "the question of agency is one of fact, and that agency and *the extent of an agent's authority* may be shown by circumstantial evidence." *Id.* (emphasis added) Thus, for this *Erie*-bound court, an agent's status as a surplus lines agent does not resolve the issue of the full scope of an agent's authority.

In the situation before us, Acceptance supplied Southwestern with blank policy forms and extended authority to them to receive and accept proposals for insurance; to effect, issue, countersign and deliver policies authorized by Acceptance; and to collect and receive premiums on behalf of Acceptance. Most importantly, the agency agreement between Acceptance and Southwestern explicitly provided that Southwestern had discretion in determining when to cancel a policy.[13]

■ Drawing inferences most favorable to the Weyants from this testimony, the boundaries of Southwestern's authority were not so clearly marked as to warrant granting summary judgment in favor of Acceptance. Rather, the issue of whether Southwestern acted with the implied or apparent authority of Acceptance requires a resolution by the trier of fact whether Southwestern's conduct would have led a reasonably prudent person to believe that Southwestern could bind Acceptance through their actions. *See Lucadou v. Time Ins. Co.*, 758 S.W.2d 886, 889 (Tex.Ct. App.1988) (holding inappropriate a summary judgment in favor of an insurance company because the insurer failed to conclusively resolve the factual issue of the precise scope of the agent's authority to bind the insurer).

---

**13.** *See supra,* note 6.

We conclude that the full scope of authority for a surplus lines agent presents a genuine issue for trial, and thus hold that the district court improvidently granted summary judgment in favor of Acceptance.

REVERSED AND REMANDED.