**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 94-10987

INTERNATIONAL MEAT TRADERS, INC., ETC.,

Plaintiff-Appellant-Cross-Appellee,

versus

H&M FOOD SYSTEMS, ETC., ET AL.,

Defendants-Appellees,

H&M FOOD SYSTEMS CO., INC.,

Defendant-Appellee-Cross-Appellant.

H&M FOOD SYSTEMS CO., INC.,

Plaintiff-Appellee-Cross-Appellant,

versus

CKS, INC., d/b/a INTERTRADE, ET AL.,

Defendants,

INTERNATIONAL MEAT TRADERS, INC., d/b/a INTERTRADE,

Defendant-Appellant-Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Texas

December 5, 1995

Before POLITZ, Chief Judge, WISDOM, and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Plaintiff International Meat Traders, Inc., ("Intertrade") appeals the district court's final judgment on its breach of contract claim against defendant H&M Food Systems. It also appeals the order granting partial summary judgment on behalf of H&M, as well as costs and fees assessed by the court. H&M cross-appeals the denial of its motion for judgment as a matter of law and that part of the final judgment not granting relief on its counterclaims. For the following reasons we find no error by the district court and affirm its final judgment.

**BACKGROUND**

Intertrade is a large wholesale supplier and trader of meats. During 1991, Intertrade sold meat products to H&M Food Systems and the other defendant companies. H&M processed the meat products to make, inter alia, pepperoni and sausage for resale.

Prior to the instant dispute, Intertrade and H&M dealt with each other by phone. Steve Dial, H&M's purchasing agent, would submit orders for the meat products to Jerry Knoepfler of Intertrade. Knoepfler would then forward a written confirmation of the order to Dial. Sometimes Dial would sign the confirmations and return them to Knoepfler. Other times he would send Intertrade purchase orders stamped "confirmation of phone orders." At still other times he would remit nothing.

In late 1990, H&M was looking for a less expensive replacement for the domestic lean pork used in its pepperoni manufacture. To that end, he placed initial written orders with Knoepfler for imported Danish pork skirt and diaphragm meat. In February of 1991, based on his satisfaction with the initial deliveries and Knoepfler's representations about the dramatically increasing demand for Danish pork skirt and diaphragm meat, Dial placed large written orders for the substitute ingredients for delivery. Intertrade says Dial was trying to take advantage of current prices before the rise he expected for later that year. Instead of inflating, however, prices in the industry fell in the summer of 1991.

Around this time H&M was also having problems with its pepperoni production and had to reformulate its recipes. The problem was oxidative rancidity, which affected the taste and color of the pepperoni but did not affect its fitness for human consumption. After investigation, H&M concluded that Intertrade had delivered pork "diaphragms" instead of the agreed "Danish pork skirt and diaphragm meat," and that this difference contributed to its rancidity problems. Consequently, H&M informed Intertrade and Knoepfler that it would not accept delivery of any more imported pork skirt and diaphragm meat after June 1, 1991. In a conversation around May 2, 1991, Knoepfler agreed to substitute 60% of H&M's then outstanding orders for imported Danish pork skirt and

diaphragm meat with domestic lean pork.[1] Therefore, as of May 2, 1991, approximately 40% of the then outstanding Intertrade confirmations for pork skirt and diaphragm meat did not allow replacement or substitution, and approximately 60% had language allowing substitution of "equal or better."

Intertrade alleges that H&M began to refuse both to accept meat ordered from Intertrade and to pay on the purchase contracts on product to be delivered from October 1991 through January 1992. Intertrade also alleges that a substantial portion of the orders Dial placed from February through April 1991, included commitments to purchase diaphragm meat.

Intertrade sued H&M for breach of contract in federal court in New Jersey. About a month later, H&M countersued in Texas state court based on breach of express warranty and breach of implied warranty of merchantability and fitness for a particular purpose. Both cases were removed and consolidated in federal district court in Fort Worth, with H&M's suit included as a counterclaim.

H&M filed a motion for partial summary judgment against Intertrade claiming that the Intertrade confirmations which had not been signed and returned by H&M did not conform to the Texas Statute of Frauds. The trial court granted H&M's motion, holding that the 100 or so confirmations which were unsigned and not returned to Intertrade constituted merely unsigned, unenforceable offers. The case proceeded to a jury trial for breach of the confirmations that H&M did sign and return to Intertrade. The jury found against Intertrade on those written contracts.

Intertrade argues on appeal that the Merchants' Exception to the Statute of Frauds rendered the confirmations enforceable oral contracts. Intertrade also asserts that H&M admitted that the orders constituted "commitments made." Intertrade argues that the district court's error in granting partial summary judgment prejudiced its case before the jury, making reversal and remand necessary.

Intertrade moved for judgment on the counterclaim of H&M on the basis that the cause of

---

[1]There is a dispute as to whether this 60% figure should have applied to all orders or just those which had not been eliminated by the district court's grant of partial summary judgment. H&M took the position at trial that it met the 60% agreement as to the remaining orders and thus breached no contracts with Intertrade. H&M also argued that the substitutions which Intertrade made upon H&M's request would not be honored by H&M. This discrepancy does not affect our decision.

action, if any, was no longer the property of H&M - Texas and had not been transferred to H&M - Delaware. The trial court's denial of the motion, Intertrade asserts, prejudiced its case and requires reversal and remand.

Finally, Intertrade claims that the jury verdict form was unclear on the question of liability. Intertrade contends that the jury verdict was actually in its favor and that the district court misinterpreted it, requiring remand for a calculation of damages.

H&M cross appeals the district court's ruling on the written contracts only if we reverse and remand on the issue of the course of dealing between the parties as to the written contracts.

### DISCUSSION

#### Partial Summary Judgment

We review a district court's grant of summary judgment <u>de novo</u>. <u>Weyant v. Acceptance Ins. Co.</u>, 917 F.2d 209, 212 (5th Cir.1990). We consider all the facts contained in the summary judgment record and the inferences to be drawn therefrom in the light most favorable to the non-moving party. <u>Id.</u>

As noted above, the district court granted H&M's motion for partial summary judgment, finding that the "verbal orders" were unenforceable because the only documentation to support them were Intertrade's confirmations, which H&M never signed and returned. Intertrade disagrees, claiming that these orders are the very agreements the Merchants Exception to the Texas Statute of Frauds contemplates.

The Texas Statute of Frauds provides:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon by the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(b) Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days

4

after it is received.

> (c) A contract which does not satisfy Subsection (a) but which is valid in other respects is enforceable . . . (2) if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made but the contract is not enforceable under this provision beyond the quality of goods admitted; or . . . .

Tex. Bus. & Com. Code Ann. § 2.201 (West 1968).

It is undisputed that the value of each of the alleged verbal orders was greater than $500 and that H&M neither signed the confirmations at issue nor issued purchase orders of its own.

Intertrade argues that the Texas legislature designed the Merchants Exception, subsection (b) above, to address situations like the one before us, where a buyer may enforce an agreement against a seller but the seller may not do likewise because the only writing in existence is the written confirmation by the seller. Intertrade reads the statute to eliminate the buyer's ability to gamble upon the market by obliging the buyer to the contract unless the buyer communicated his objections within ten days after receipt of the confirmation.

H&M counters that the Merchants Exception does not apply when a seller's confirmation contains a provision requiring the buyer to sign and remit. The Intertrade confirmation contained the following language:

> REMARKS:    Any change in this contract must be confirmed by the seller in writing. Please sign and return the duplicate of this contract.

> Read and agreed by buyer                          Intertrade

> By _____                          By /s/ Jerry Knoepfler

Intertrade argues that the confirmation only sought the buyer's acknowledgment of the law, that effecting any change requires confirmation in writing. Hence, the signature line does not render any Intertrade sales confirmation unenforceable or beyond the scope of the Merchants Exception to the Statute of Frauds. H&M maintains that the parties are not bound until the buyer actually signs and returns the confirmation, or submits his own written purchase order.

All parties and the district court rely on a prior case from this circuit as controlling. In Great Western Sugar Company v. Lone Star Donut Company, 721 F.2d 510 (5th Cir. 1983), we considered

5

an alleged confirmation of an oral agreement which read:

> [T]his letter is a written confirmation of our agreement. Please sign and return to me the enclosed counterpart of this letter signaling your acceptance of the above agreement.

Id. We supported the trial court's conclusion that as master of its offer the sender, Great Western, "had the power to require written acceptance as a prerequisite to the formation of a contract." Id. at 501-11. Intertrade contends that the signature request only concerned acknowledgment of that "remarks" section. On the contrary, the language asks for the remittance of a signature and a duplicate of the contract. It is not evident that Intertrade only sought acknowledgment of the conditions for making changes in the contract. The language required that H&M take further steps if it agreed to be bound by the terms stated in the contract. Each of these "confirmations" reads as an offer requesting written acceptance to be binding and that is how we treat them.

Intertrade also faults the district court for not finding that the history of dealings between Intertrade and H&M with respect to the oral contracts raised a fact issue, making summary judgment improper. However, as we also held in Great Western, "[t]his overlooks the circumstance that no enforceable agreement had been entered," and "[f]or one to have been, a written confirmation was required at the least." As the district court correctly concluded, "whether an unenforceable oral agreement existed is not a relevant issue of fact which can defeat summary judgment in this case." The Merchants Exception does not protect the alleged oral agreements from the statute of frauds, so we uphold the district court's grant of partial summary judgment.

**Real Party in Interest**

At the close of the evidence, Intertrade moved for judgment as a matter of law as to H&M's counterclaim, which was originally filed in state court in Texas. H&M - Texas had originally brought the counterclaim; but it dissolved and transferred certain assets to HMFS Acquisition, Inc., which later became H&M - Delaware. Intertrade contends that the counterclaim was not transferred by H&M - Texas prior to dissolution and that the counterclaim was not modified to designate H&M - Delaware.

6

Rule 17(a) of the Federal Rules of Civil Procedure says "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest . . . ." Raising this defense for the first time on a motion for judgment as a matter of law, at the close of all evidence, offends the Rule where it is not to be used as a trial-by-ambush tactic. See Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir. 1989), cert. denied, 494 U.S. 1031, 110 S. Ct. 1480, 108 L. Ed. 2d 617 (1990). The issue has been waived effectively because of its tardiness.

**Jury Verdict Form**

Finally, Intertrade contends that the first question in the jury verdict form was confusing and contained a "double negative." The form asked:

> Do you find from a preponderance of the evidence that H&M breached its agreement with Intertrade for the purchase of meat, and such breach was not excused?

The jury answered "No."

> Do you find from a preponderance of the evidence Intertrade breached the implied warranty of merchantability?

The jury answered "No."

> Do you find from a preponderance of the evidence Intertrade breached its implied warranty of fitness for a particular purpose?

The jury answered "No."

By its construction, according to Intertrade, a "no" response to the first question is truly a "yes."

An erroneous jury instruction without objection will warrant reversal if plain error has been demonstrated. Highlands Ins. v. National Union Fire Ins., 27 F.3d 1027, 1032 (5th Cir. 1994), cert. denied, 115 S. Ct. 903, 130 L. Ed. 2d 786 (1995). Reviewing for plain error means determining whether "the deficient charge was likely responsible for an incorrect verdict which in itself creates a substantial injustice" or resulted in a " 'plain error' so fundamental as to result in a miscarriage of justice." Kelly v. Boeing Petroleum Services, Inc., 61 F.3d 350, 362 (5th Cir. 1995); Rodrigue v. Dixilyn Corp., 620 F.2d 537, 540 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S. Ct. 923, 66

L. Ed. 2d 842 (1981).

We find no plain error. The record amply supports the jury's finding regarding liability. <u>See</u> <u>Overseas Private Inv. Corp. v. Metropolitan Dade County</u>, 47 F.3d 1111, 1116 (11th Cir. 1995). Intertrade greatly overstates any ambiguity in the first question. It is simply a conjunctive question asking whether there was a breach and whether such breach was not excused. If both clauses are true, the answer should be "yes." If either is not, then the answer should be "no." There is no merit to Intertrade's claim that a jury could not understand how to respond appropriately.

Furthermore, Intertrade did not object to the wording at any time before the jury retired to deliberate, thereby not preserving the issue for appeal. We have long held that a party must object to a jury instruction before the jury retires to consider its verdict, "stating distinctly the matter objected to and the grounds of the objection . . ." <u>Kelly</u>, 61 F.3d at 361. By failing to challenge the jury verdict form at the appropriate time, Intertrade effectively has waived its right to raise the issue on appeal.

AFFIRMED.