United States Court of Appeals,

Fifth Circuit.

No. 94-30275.

UNITED INDUSTRIES, INC., Plaintiff-Appellant,

v.

EIMCO PROCESS EQUIPMENT COMPANY, A Division of Envirotech Corporation, et al., Defendants-Appellees.

Aug. 23, 1995.

Appeal from the United States District Court for the Middle District of Louisiana.

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

United Industries, Inc. (United) appeals the district court's grant of partial summary judgment in favor of Defendants. The court's ruling, certified under Federal Rule of Civil Procedure 54(b), dismissed United's federal antitrust claims and Louisiana unfair trade practices claims. United also appeals three earlier rulings of the district court. Because two of those rulings are not referenced by the court's certification, we lack appellate jurisdiction to review them. Otherwise, we affirm.

BACKGROUND

This case concerns equipment purchased by municipalities for use in secondary wastewater treatment systems. Typically, a municipality hires a consulting engineer to design the system. The engineer first chooses a particular treatment process. One such process is the vertical ditch process, which employs aerating and clarifying equipment. Aerators circulate oxygen through the

1

wastewater and clarifiers clarify the wastewater. The vertical turbine aerator is one of three types of aerators. In the United States, Defendant Eimco Process Equipment Company (Eimco) markets the Hubert vertical turbine aerator, and United markets the Simcar vertical turbine aerator.[1]

United's Complaint addresses the sale of vertical turbine aerators for use in Eimco's trademarked Carrousel vertical ditch systems. After selecting the vertical ditch process, the engineer chooses between Eimco's Carrousel system and other vertical ditch systems. If the engineer chooses the Carrousel system, Eimco collects a licensing fee for the use of its non-patented technology. In turn, Eimco provides the engineer with specifications for constructing the system and warrants that the water in the vertical ditch will circulate at a minimum rate of one foot per second. Eimco collects its licensing fee regardless of whether the municipality uses Eimco's equipment.

Eimco's specifications require use of the "Hubert aerator or equal." If a contractor bidding to construct the system offers an aerator other than the Hubert, DHV reviews the aerator to determine whether it may be used in the system. According to United, requiring DHV's review delays the start of construction and places the burden of any resulting aerator changes on the contractor. As

---

[1]There are four other defendants in this case. Defendant D.H.V. Raadgevend Ingenieursbureau B.V. (DHV) is a Dutch engineering firm which reviews aerators for Eimco. Defendant Simon-Hartley, Inc. is a British company that produces the Simcar. Defendant Ashbrook-Simon-Hartley also markets the Simcar in the United States. Finally, Defendant William D. Graue is an independent sales representative who works on behalf of Eimco.

a result, United contends, the DHV review requirement dissuades contractors from offering aerators other than the Hubert.

United has quoted the Simcar aerator to contractors for use on vertical ditch systems other than Carrousel systems. For business reasons, however, United refuses to quote the Simcar for use in Carrousel systems because of Eimco's specifications and licensing fee. In particular, United does not wish its equipment to be reviewed by its competitor. Consequently, United attempts to persuade engineers to keep their systems' specifications open.

In its Third Amended Complaint, United asserted antitrust claims under Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1-11 (1988) (Claims One through Four and Six), unfair trade practices claims under the Louisiana Unfair Trade Practices Act (LUTPA), La.Rev.Stat.Ann. §§ 51:1401-:1419 (West 1987 and Supp.1995) (Claim Seven), a claim for violation of a prior consent judgment (Claim Five), and a claim for tortious interference with contract (Claim Eight). At this point in the litigation, the court had already dismissed United's Racketeer Influenced and Corrupt Organizations (RICO) claims, 18 U.S.C. §§ 1961-1968 (1988).

In one ruling, the district court granted partial summary judgment to Eimco on the consent judgment claim because United failed to indicate how Eimco violated the consent judgment. Then, in a separate ruling, the court granted partial summary judgment to Defendants on the antitrust and LUTPA claims. On the antitrust claims, the court determined that United lacked standing to assert them and, alternatively, that Eimco lacked market power to cause

3

antitrust injury.  The court granted summary judgment on the LUTPA claims because of its ruling on the antitrust claims.  It refrained from entering final judgment because it retained the tortious interference with contract claim.  Nevertheless, the court certified for appeal under Rule 54(b) its dismissal of Claims One through Seven in the Third Amended Complaint.  United appeals the two partial summary judgment orders, the dismissal of its RICO claims, and the denial of a motion to compel discovery.[2]

## DISCUSSION

We review a district court's grant of summary judgment de novo.  *Weyant v. Acceptance Ins. Co.,* 917 F.2d 209, 212 (5th Cir.1990).  We consider all the facts contained in the summary judgment record and the inferences to be drawn therefrom in the light most favorable to the non-moving party.  *Id.*

### I.

Initially, we consider whether we have appellate jurisdiction over those rulings not referenced by the district court's certification, which referred only to its dismissal of Claims One through Seven in the Third Amended Complaint.  The court's certification did not reference the court's dismissal of the RICO claims nor its denial of the motion to compel.

We lack appellate jurisdiction over the two rulings not referenced by court's certification.  In an interlocutory appeal certified by the district court under 28 U.S.C. § 1292(b) and Rule

---

[2]The court denied United's motion to compel discovery of three DHV computer programs.

4

54(b), we have no jurisdiction to consider orders of the district court outside the scope of certification. *United States v. Stanley,* 483 U.S. 669, 677, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987); *see also Swint v. Chambers County Comm'n,* --- U.S. ----, ----, 115 S.Ct. 1203, 1211, 131 L.Ed.2d 60 (1995) (reaffirming *Stanley* ). Accordingly, we dismiss for lack of appellate jurisdiction United's appeal concerning the dismissal of its RICO claims and the denial of its motion to compel.

## II.

The district court determined that United lacked standing to assert antitrust claims because it failed to quote on any Carrousel projects. Standing to assert a private antitrust action requires a proper plaintiff to show injury to its business or property caused by a violation of the antitrust laws.[3] *See McCormack v. NCAA,* 845 F.2d 1338, 1341 (5th Cir.1988). United admits that it did not quote the Simcar on Carrousel projects, which require the "Hubert aerator or equal." Instead, United claims injury because it was "foreclosed" from competing on Carrousel projects by Defendants' actions.

The question is whether United has created an issue of material fact as to causation even though it never quoted the

---

[3]Section 4 of the Clayton Act delineates private party standing: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue in any district court of the United States...." 15 U.S.C. § 15(a) (1988).

5

Simcar on Carrousel projects specifying "Hubert aerator or equal."[4] United must offer proof of some damage flowing from the allegedly unlawful actions. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1572 n. 9, 23 L.Ed.2d 129 (1969). In the refusal to deal context, a refused demand is the most reliable evidence of causation, and the absence of a demand is, without other causal evidence, fatal to a plaintiff's case. *Sullivan v. NFL,* 34 F.3d 1091, 1104 (1st Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995); *Out Front Prods. v. Magid,* 748 F.2d 166, 170 (3d Cir.1984).[5]

In *Jayco,* Jayco alleged resale price maintenance between its supplier and three other dealers bidding on supplies. Because Jayco did not bid on the supplies nor offer proof that the supplier prevented Jayco from bidding, we concluded that Jayco lacked

---

[4]United's Section 1 and 2 claims allege that Defendants' actions foreclosed competition by United on Carrousel projects. Defendants by their actions ultimately sought to have consulting engineers choose Carrousel systems. Therefore, we focus on whether the use of Eimco's specifications and licensing fee caused United's alleged injury.

[5]In refusal to deal cases, because the refusal to deal is itself the antitrust violation, a simple demand satisfies causation. In a competitive bid situation where the antitrust violation is the noncompetitiveness of the bidding process, the mere submission of a bid does not satisfy causation; in addition, the bidder must show that its bid would have been successful but for the antitrust violation. *Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1566 (5th Cir.1984) (en banc), *cert. denied,* 474 U.S. 1053, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986). When a party does not submit a bid, the additional causal inquiry becomes whether the party can show a high likelihood of success but for the antitrust violation. *Jayco Sys. v. Savin Business Machs. Corp.,* 777 F.2d 306, 314 & n. 22 (5th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 30 (1986).

standing to assert the antitrust violation. *Jayco,* 777 F.2d at 316. Likewise, in this case United failed to quote the Simcar on the projects about which it complains. The district court relied on *Jayco* for its ruling on standing.[6]

United contends that it need not have quoted the Simcar on a Carrousel project if United's quote, because of the alleged antitrust violation, would have had no chance of success. We agree. In the refusal to deal context, proof of futility satisfies causation when a demand is lacking. *See Zenith,* 395 U.S. at 120 n. 15, 89 S.Ct. at 1575; *Hanover Shoe v. United Shoe Mach. Corp.,* 392 U.S. 481, 487 n. 5, 88 S.Ct. 2224, 2228 n. 15, 20 L.Ed.2d 1231 (1968); *Sullivan,* 34 F.3d at 1104; *Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.,* 855 F.2d 465, 470 (7th Cir.1988); *Magid,* 748 F.2d at 172; *cf. Jayco,* 777 F.2d at 316 (noting that Jayco was not prevented from bidding). United contends that it is futile for it to offer the Simcar on Carrousel projects. We inquire whether United's proof of futility is sufficient to withstand summary judgment.[7]

To show futility, United relies on the affidavits of its

---

[6]United attempts to distinguish *Jayco* by pointing to the portion of our opinion that addresses Jayco's proposed business expansion. Because a business expansion that fails does not result in an injury to a business, we allow antitrust standing in cases involving new businesses if they can show an intent to bid and preparation for the bid. *Id.* at 313. United's business is ongoing, however, so the rule for new businesses does not apply.

[7]We need not consider United's likelihood of success in quoting on a Carrousel project if United's proof of futility is not sufficient to create a material issue of fact. *See supra* note 4.

Chairman of the Board, Harold J. Beard, and its expert, Dr. Taylor. In their opinion, quoting the Simcar on Carrousel projects is futile because of Eimco's licensing fee and DHV's review. Beard believes that Eimco can use its licensing fee to subsidize its Hubert sales. Both men believe the requirement of DHV review dissuades contractors from offering the Simcar because the contractor must bear any costs resulting from the review and delay construction until DHV completes its review.

United's evidence of futility does not raise a material issue of fact. Although Eimco could use the licensing fee to subsidize its aerator sales, United's theory amounts to pure speculation. United does not contend that Eimco ever offered its aerator on a Carrousel project at or below cost. United's concern over DHV's review is likewise speculative. Although a contractor might refuse to bid an aerator other than the Hubert because of the possible cost and time burdens imposed by DHV's review, United offers no positive evidence in support of its theory.[8]

In sum, United's evidence of futility is too speculative to withstand summary judgment. United's evidence amounts to nothing more than a pessimistic belief that it was not worth attempting to compete. *See Magid,* 748 F.2d at 172. Because United fails to raise a material issue of fact concerning causation, we conclude

---

[8]In his affidavit, Beard states that United suggested to contractors that they offer United's equipment without complying with Eimco's specifications. The contractors refused United's suggestion because it would put their bids off specification. The contractors' actions were predictable and show no connection to the DHV review requirement.

8

that the district court properly granted summary judgment on United's antitrust claims.[9]

III.

Our last task is to consider United's claim concerning Eimco's alleged violation of the prior consent judgment. In 1984, United filed an antitrust suit against Eimco's parent company. The parties executed a consent judgment, which provides:

> [United] may obtain approval from D.H.V. for aerators manufactured and sold by [United or others] without interference from [Eimco] so long as the nature of such approval does not involve a breach of any obligation of duty owed to [Eimco] by D.H.V., and so long as [Eimco] is not requested to warrant or guarantee the waste water treatment system in which such aerators are used.

United alleges that Eimco has violated the consent judgment by, first, requiring United to use Eimco as an intermediary to obtain DHV approval of the Simcar aerator on particular projects and, second, conspiring with DHV to charge an exorbitant fee as part of the approval process.

By its express terms, however, the consent judgment does not apply to wastewater systems that Eimco is requested to warrant. In other words, the consent judgment does not apply to Carrousel systems. United complains of DHV's aerator review, but that review occurs only on projects employing Eimco's specifications. Because

---

[9]To assert a private cause of action under LUTPA, the unfair trade practice must cause a consumer or business competitor an ascertainable loss of money or movable property. La.Rev.Stat.Ann. § 51:1409.A; *Monroe Med. Clinic v. Hospital Corp. of Am.,* 522 So.2d 1362, 1365 (La.Ct.App.2d Cir.1988). Because United fails to raise a fact issue as to causation, we also affirm the district court's grant of summary judgment on United's LUTPA claims.

United's allegations address projects to which the consent judgment does not apply, we conclude that Eimco has not violated the consent judgment.

## CONCLUSION

We dismiss for lack of appellate jurisdiction United's appeal of the dismissal of its RICO claims and the denial of its motion to compel discovery.  We affirm the district court's grant of partial summary judgment on the antitrust and LUTPA claims and its partial summary judgment ruling concerning the violation of the prior consent judgment.

AFFIRMED IN PART, DISMISSED IN PART FOR LACK OF JURISDICTION.