# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

─────────

No. 16-10105

─────────

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2017

Lyle W. Cayce
Clerk

VICKIE COOK, Individually and as Natural Mother to Deanna Cook; N. W.,
a Minor, by and through her Grandparent and Guardian Vickie Cook; A. W.,
a Minor, by and through her Grandparent and Guardian Vickie Cook;
KARLETHA COOK-GUNDY, Individually and as Representative of the
Estate of Deanna Cook, Deceased,

       Plaintiffs – Appellants,

v.

CITY OF DALLAS; TONYITA HOPKINS; KIMBERLEY COLE; JOHNNYE
WAKEFIELD; YAMINAH SHANI MITCHELL; OFFICER JULIE
MENCHACA; OFFICER AMY WILBURN; ANGELIA HEROD-GRAHAM; T-
MOBILE USA, INCORPORATED; METROPCS COMMUNICATIONS,
INCORPORATED; SAMSUNG ELECTRONICS COMPANY, LIMITED;
SAMSUNG TELECOMMUNICATIONS AMERICA L.L.C.,

       Defendants – Appellees.

*****************************************************************************

VICKIE COOK, Individually and as Natural Mother to Deanna Cook; N. W.,
a Minor, by and through her Grandparent and Guardian Vickie Cook; A. W.,
a Minor, by and through her Grandparent and Guardian Vickie Cook;
KARLETHA COOK-GUNDY, Individually and as Representative of the
Estate of Deanna Cook, Deceased,

       Plaintiffs – Appellants,

v.

T-MOBILE USA, INCORPORATED; METROPCS COMMUNICATIONS,
INCORPORATED, SAMSUNG ELECTRONICS COMPANY, LIMITED;
SAMSUNG TELECOMMUNICATIONS AMERICA L.L.C.,

       Defendants – Appellees.

No. 16-10105

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-3788
USDC No. 3:14-CV-2907

---

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

After the tragic murder of Deanna Cook, members of Cook's family brought various claims against several telecommunications companies, alleging that the location services technology on Cook's cellular phone and network caused a delay in the response to her 9-1-1 call, resulting in her death. These claims include negligence, gross negligence, strict products liability, breach of warranty, a violation of the Texas Deceptive Trade Practices Act, misrepresentation, wrongful death, and a survival action. The district court dismissed all claims against the telecommunications companies, holding that the plaintiffs did not adequately plead that the companies caused the plaintiffs' injuries, and therefore the companies were immune from liability under Texas law. The district court also transferred the case to another judge, who later consolidated it with a case brought by the same plaintiffs. The district court subsequently certified the dismissal of the plaintiffs' claims as immediately appealable under Federal Rule of Civil Procedure 54(b). On appeal, the plaintiffs argue that the district court erred when it dismissed their claims and abused its discretion when it transferred the case and consolidated it with another action. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10105

**I.**

Moments before Deanna Cook was murdered inside her home by an intruder, she managed to call 9-1-1 for assistance from her cellular phone.[1] Cook's call was taken by an employee at the call center of the City of Dallas Police Department's Communications Section. Cook's location was provided to the 9-1-1 call center "within several minutes" of the call. Cook can be heard for the first seventeen minutes of the recorded call screaming for help and pleading with her attacker to stop harming her. Nearly fifty minutes after Cook placed her 9-1-1 call, police officers arrived at Cook's home. The officers inspected the outside of Cook's home and then left without entering the residence.

Two days later, Cook's daughters, mother, and sister went to her home. They noticed that water was leaking from various places around the house. The family members went to the rear of the house, where they kicked the patio door down and entered the residence. Upon entering the bathroom, the family members discovered Cook's body, floating in the overflowing bathtub.

Cook's estate and relatives (collectively, the Cook plaintiffs) filed a complaint against the City of Dallas and several city employees, seeking damages for Cook's death. *Cook v. The City of Dallas*, No. 3:12-CV-3788-P (*Cook I*).[2] After the Cook plaintiffs filed two amended complaints, the district court entered a series of orders dismissing a substantial portion of their claims in *Cook I*.

---

[1] We accept as true the well-pleaded factual allegations in the plaintiffs' complaint, as we must when reviewing a dismissal for failure to state a claim. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

[2] In *Cook I*, the Cook plaintiffs sued under 42 U.S.C. § 1983 and under Texas law, alleging that Cook died because the City and several of its employees failed to timely respond to Cook's 9-1-1 call and did not provide experienced call operators or police officers to investigate her call.

No. 16-10105

Two years after the Cook plaintiffs filed their lawsuit in *Cook I*, they filed a third amended complaint, seeking to add as new defendants T-Mobile, MetroPCS, Samsung Electronics Co., and Samsung Telecommunications America, LLC (collectively, the Telecommunications defendants). The district court struck the third amended complaint because the Cook plaintiffs had filed it without leave and without the defendants' written consent. The district court directed the Cook plaintiffs to comply with Federal Rule of Civil Procedure 15 if they wished to amend their complaint.

Rather than seeking leave to amend their complaint in *Cook I*, the Cook plaintiffs filed an entirely new action. *Cook v. T-Mobile USA, Inc.*, No. 3:14-CV-2907-M (*Cook II*). The complaint in *Cook II* repeated many of the same allegations the Cook plaintiffs had alleged in *Cook I* against the City and the 9-1-1 operator and added claims against the Telecommunications defendants. Specifically, the Cook plaintiffs alleged that the phone and systems manufactured and operated by the Telecommunications defendants and used by Cook did not allow Cook's name and exact location to be instantly transmitted to a 9-1-1 call taker, a dispatcher, or on-board police patrol cars. The Cook plaintiffs allege that had this information been more quickly transmitted, Cook's life would have been spared. The Cook plaintiffs' claims against the Telecommunications defendants included negligence, gross negligence, strict products liability, breach of warranty, a violation of the Texas Deceptive Trade Practices Act, misrepresentation, wrongful death, and a survival action.

The Telecommunications defendants filed joint motions to transfer *Cook II* to the same district court judge who was presiding over *Cook I* for possible consolidation. The district court granted the motion to transfer despite the Cook plaintiffs' objections. The district court subsequently granted a motion to dismiss *Cook II* filed by Samsung America but allowed the Cook plaintiffs leave

to amend their *Cook II* complaint. After the Cook plaintiffs amended their complaint, the Telecommunications defendants filed Rule 12(b)(6) motions to dismiss, which the district court granted with prejudice. Three days after entering the order dismissing all of the claims against the Telecommunications defendants, the district court consolidated what remained of *Cook II* with *Cook I*.

Following the district court's dismissal of the claims against them, the Telecommunications defendants jointly filed an unopposed motion under Federal Rule of Civil Procedure 54(b) to certify as immediately appealable the district court's interlocutory order dismissing the Cook plaintiffs' claims. The district court granted this motion, ordering that "all claims against the Telecommunications Defendants [are] certified . . . as final and immediately appealable." The Cook plaintiffs timely appealed pursuant to that order.

This appeal only involves the dismissal of the claims against the Telecommunications defendants in *Cook II*.

## II.

We review *de novo* the district court's dismissal of the Cook plaintiffs' claims under Rule 12(b)(6). *Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011). "We may affirm a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record." *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)). We accept as true well-pleaded factual allegations in the complaint and view the facts in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "The issue is not whether the plaintiff[s] will ultimately prevail, but whether [they are] entitled to offer evidence to support [their] claim[s]." *Jones v. Greniger*, 188 F.3d 322, 324 (5th Cir. 1999). A complaint survives a motion to dismiss where the complaint

states a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

We review the district court's decision to transfer a case for abuse of discretion. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 n.3 (5th Cir. 1997). Likewise, we review the district court's decision to consolidate cases for abuse of discretion. *Green v. Polunsky*, 229 F.3d 486, 488 (5th Cir. 2000).

## III.

We first address the district court's dismissal of all of the Cook plaintiffs' claims against the Telecommunications defendants. The district court found that the Cook plaintiffs failed to adequately plead that the Telecommunications defendants' actions caused Cook's death and concluded that the Telecommunications defendants were entitled to immunity under Texas law. Because we agree the Cook plaintiffs have not adequately alleged that the Telecommunications defendants' acts or omissions caused Cook's death, we hold that the Telecommunications defendants are entitled to immunity under Texas law and the dismissal of the Cook plaintiffs' claims was proper.

Under Texas law, wireless service providers and manufacturers are generally immune from claims arising out of their provision of 9-1-1 services. Specifically, section 771.053(a) of the Texas Health and Safety Code states that

[a] service provider of communications service involved in providing 9-1-1 service . . . [or] a manufacturer of equipment used in providing 9-1-1 service . . . is not liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission proximately causing the claim, damage, or loss constitutes gross negligence, recklessness, or intentional misconduct.

Tex. Health & Safety Code Ann. § 771.053(a).

As a threshold matter, the Telecommunications defendants satisfy the two preconditions for immunity under section 771.053(a): first, they are each

No. 16-10105

"[a] service provider of communications service involved in providing 9-1-1 service . . . [or] a manufacturer of equipment used in providing 9-1-1 service[;]" and second, the claims against them "aris[e] from the provision of 9-1-1 service[.]" As for the first precondition, the Cook plaintiffs' complaint alleges that Cook called 9-1-1 using her cellular phone which was either manufactured by or used the communications services of the Telecommunications defendants. Further, the Cook plaintiffs allege that Cook's call was successfully connected to a 9-1-1 call center employee and that Cook's location was relayed to the call center. Each of the Cook plaintiffs' claims is premised on the allegation that had Cook's location been available to emergency responders "immediately" rather than after "several minutes," Cook's life would have been spared. This satisfies the second precondition that the claims arise from the provision of 9-1-1 services.[3]

Because section 771.053(a) applies to the Telecommunications defendants, the Cook plaintiffs may overcome immunity only by plausibly alleging that the Telecommunications defendants' acts or omissions: (1) "proximately caus[ed]" their injuries; and (2) "constitute[d] gross negligence, recklessness, or intentional misconduct." Tex. Health & Safety Code Ann. § 771.053(a). The Cook plaintiffs have failed to adequately allege that the Telecommunications defendants' acts or omissions proximately caused their injuries; therefore, they have failed to overcome the immunity afforded the Telecommunications defendants by section 771.053(a).

---

[3] The Telecommunications defendants contend that they are immune under both section 771.053(a) and section 772.407 of the Texas Health and Safety Code. Section 772.407 provides immunity to suppliers of equipment used in the provision of 9-1-1 services. *See* Tex. Health & Safety Code Ann. §772.407. The language of section 772.407 is nearly identical to the language of section 771.053(a). Because we conclude that all of the Telecommunications defendants satisfy the preconditions for immunity under section 771.053(a), we need not address whether they are immune under section 772.407.

No. 16-10105

"The components of proximate cause are cause in fact and foreseeability." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). "The cause-in-fact element is satisfied by proof that (1) the act was a substantial factor in bringing about the harm at issue, and (2) absent the act ('but for' the act), the harm would not have occurred." *HMC Hotel Props. II Ltd. P'ship v. Keystone-Texas Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014). "These elements cannot be established by mere conjecture, guess, or speculation." *Id.*

The Cook plaintiffs allege that the Telecommunications defendants failed to implement readily available location tracking technology that would have allowed the 9-1-1 operators to locate Cook "quicker than the several minutes it actually took." They also allege that this location tracking technology would have caused Cook's name and exact address to immediately appear on the onboard computers located in the vehicles of police and medical personnel located in Cook's vicinity. They allege that Cook's call lasted "nearly 17 minutes" and that the responding officers did not arrive, despite dispatch, until "approximately 50 minutes" later. Further, the Cook plaintiffs plead that the responding emergency personnel did not enter Cook's house to investigate her call. They claim that "Cook's death would have been prevented if the emergency medical technicians had been able to utilize readily available location tracking technology to arrive at Ms. Cook's home within 5 minutes of her call."

We find the Texas Supreme Court's recent decision in *City of Dallas v. Sanchez*, 494 S.W.3d 722 (Tex. 2016), instructive here. Although *Sanchez* does not involve immunity under section 771.053(a) of the Texas Health and Safety Code, it does involve a defective 9-1-1 system and whether that defective system was the proximate cause of the plaintiffs' son's death. 494 S.W.3d at 724. In *Sanchez,* City of Dallas 9-1-1 dispatchers received two 9-1-1 calls within

ten minutes of each other, both originating from the same apartment complex and both requesting assistance for a drug-overdose victim. *Id.* at 725. Coincidentally, the calls were placed from different phone numbers and concerned different victims. *Id.* During the second call, the dispatcher acquired the necessary information from the caller and informed the caller that the emergency responders were en route. *Id.*   The call was prematurely disconnected. *Id.* After emergency responders arrived at the apartment complex, "they erroneously concluded that the two 9-1-1 calls were redundant and that a single individual was the subject of both calls." *Id.* Consequently, the emergency responders never came to the second caller's aid and he died six hours later. *Id.* The deceased victim's parents sued the City of Dallas for negligence, alleging that the City's phone system malfunctioned, resulting in their son's death. *Id.*

The Texas Supreme Court discussed whether the Texas Tort Claims Act's waiver of governmental immunity applied to the City of Dallas. *Id.* at 726. A central issue regarding the application of that immunity statute was "whether the phone's [defective] condition was a *proximate cause* of [the victim's] death." *Id.* (emphasis added). The court held that "the alleged telephone-system malfunction was not a proximate cause of [the victim's] death." *Id.* The court reasoned that "[a]lthough disconnection of the telephone call may have contributed to circumstances that delayed potentially life-saving assistance, the malfunction was too attenuated from the cause of [the victim's] death—a drug overdose—to be a proximate cause." *Id.* at 727. The court further explained that "[t]he alleged defect *did not actually cause* [the victim's] death nor was his death hastened or exacerbated by a telephone malfunction." *Id.* (emphasis added). "The malfunction was one of a series of factors that contributed to [the victim] not receiving timely medical assistance." *Id.* The

court explained that the actual causes of the victim's death were "drugs, the passage of time, and misinterpretation of information." *Id.*

The proximate cause inquiry in this case fits squarely under the Texas Supreme Court's analysis in *Sanchez*. The Cook plaintiffs have not sufficiently pleaded that the allegedly defective telecommunications technology and service was a proximate cause of Cook's tragic demise. The Cook plaintiffs' contention that Cook would not have died but for the fact that her location was provided in several minutes rather than immediately is not plausible on the facts alleged because the Cook plaintiffs have not plausibly alleged that any of the intervening parties would have acted differently.[4] For example, they have not plausibly alleged that the call center operator, who received Cook's location after "several minutes," would have dispatched nearby emergency personnel sooner so that they arrived while Cook was alive, rather than arriving after fifty minutes. Further, the Cook plaintiffs alleged that even after emergency personnel arrived at Cook's residence, Cook's "call was not treated as serious." They have failed to allege that the emergency personnel would have reacted differently had they received Cook's location sooner.

Even if the brief delay in relaying Cook's location "contributed to circumstances that delayed potentially life-saving assistance, the [delay] was too attenuated from the cause of [Cook's] death . . . to be a proximate cause."

---

[4] The Cook plaintiffs contend that if Cook's location had been provided sooner, then: (1) the 9-1-1 call taker and dispatcher would have handled Cook's calls with greater diligence; (2) other first responders who might have received Cook's address on their on-board computers might have been able to attend to Cook; (3) the police would have arrived within six minutes, instead of fifty minutes; and (4) the responders would have heard Cook's screams, entered Cook's residence, and found Cook alive. These allegations are insufficient to defeat a motion to dismiss as they rely on conjecture and speculation. *Twombly*, 550 U.S. at 555 (a plaintiff must "raise a right to relief above the speculative level"); *Haargaard v. Harris Cty.*, 35 F. App'x 388, at *2 (5th Cir. April 11, 2002) ("The plaintiff cannot create a fact question about cause in fact through 'mere conjecture, guess, or speculation.'" (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995))).

*Sanchez*, 494 S.W.3d at 727. Like the telephone-system malfunction in *Sanchez*, the allegedly deficient telecommunications services and technology in the instant case "did not actually cause [Cook's] death nor was [her] death hastened or exacerbated by" the alleged deficiencies. *See id.* Accordingly, we conclude that the Cook plaintiffs have not sufficiently pleaded that the Telecommunications defendants' technology and services was a proximate cause of Cook's death. Therefore, the Telecommunications defendants are immune from all of the Cook plaintiffs' claims under section 771.053(a) and the district court's dismissal of the claims was appropriate.[5]

## IV.

We next address the Cook plaintiffs' contention that the district court abused its discretion when it transferred *Cook II* and subsequently consolidated *Cook II* with *Cook I*. As a threshold matter, we must assess whether we have jurisdiction to review the district court's transfer and consolidation orders at this stage of the litigation. In cases involving an interlocutory appeal certified by a district court under Federal Rule of Civil Procedure 54(b), we lack jurisdiction over rulings not referenced by the district court's certification. *United Indus., Inc. v. Eimco Process Equip. Co.*, 61 F.3d 445, 448 (5th Cir. 1995) (citing *United States v. Stanley*, 483 U.S. 669, 677 (1987)).

In this case, the district court's Rule 54(b) was limited to the order dismissing the Cook plaintiffs' claims against the Telecommunications

---

[5] In order to overcome the Telecommunications defendants' immunity under section 771.053(a), the Cook plaintiffs must allege *both* that the Telecommunications defendants' acts or omissions: (1) "proximately caus[ed]" their injuries; *and* (2) "constitute[d] gross negligence, recklessness, or intentional misconduct." Tex. Health & Safety Code Ann. § 771.053(a). Because the Cook plaintiffs have failed to allege the proximate cause element of overcoming immunity, we need not address whether the Cook plaintiffs sufficiently pleaded that the Telecommunications defendants' acts or omissions constituted gross negligence, recklessness, or intentional misconduct.

defendants ("the September 22 Order"). The district court's Rule 54(b) certification order stated:

> It is, therefore, ORDERED that the Court's September 22, 2015 Order dismissing all claims against the Telecommunications Defendants is certified under Rule 54(b) as final and immediately appealable.

The district court referenced neither the order transferring *Cook II* nor the order consolidating *Cook II* with *Cook I* in its Rule 54(b) certification order. Therefore, we dismiss the Cook plaintiffs' appeal for lack of appellate jurisdiction as it pertains to the district court's transfer and consolidation orders. *See United Indus.*, 61 F.3d at 448.

The Cook plaintiffs urge us to exercise our pendent jurisdiction over these orders. *See Morin v. Caire,* 77 F.3d 116, 121 (5th Cir. 1996) ("In the interest of judicial economy, this court may exercise its discretion to consider under [pendent] appellate jurisdiction claims that are closely related to the issue properly before [the court]."); *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998) (pendent jurisdiction may be "proper in *rare and unique circumstances* where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order" (emphasis added)). We decline to exercise pendent jurisdiction in this case.

However, even assuming *arguendo* that we were to exercise such discretionary pendent jurisdiction, the district court likely did not abuse its discretion when it transferred *Cook II* to a different district court judge and then consolidated *Cook II* with *Cook I.* The parties and claims in the two cases were sufficiently similar[6] so as to justify the transfer from a judge who was

---

[6] In both cases, the Cook plaintiffs filed claims seeking damages based on Cook's emergency 9-1-1 call for help. While the parties in the two cases did not entirely overlap, there were several common parties, including all of the Cook plaintiffs and the City of Dallas.

completely unfamiliar with the parties of and claims at issue in *Cook II* to a judge who had already been involved with similar parties and claims for nearly two years in *Cook I. See United States v. Stone,* 411 F.2d 597, 598–99 (5th Cir. 1969) ("District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice."). Further, *Cook I* and *Cook II* involved common questions of both law and fact[7] such that the district court did not abuse its discretion when it consolidated the cases. *See Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir. 1993) ("Under [Federal Rule of Civil Procedure 42(a)], a trial court may consolidate multiple actions if the actions involve common questions of law or fact."). Accordingly, even if we were to exercise our pendent jurisdiction, the Cook plaintiff's challenge to the district court's transfer and consolidation orders would not be successful.

## V.

Accordingly, we AFFIRM the district court's dismissal of all of the Cook plaintiffs' claims against the Telecommunications defendants. Further, because we lack appellate jurisdiction over the Cook plaintiffs' appeal as it pertains to the district court's transfer and consolidation orders, we DISMISS that portion of the Cook plaintiffs' appeal.

---

*See Save Power Ltd.*, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.").

[7] The common issues of fact include the sequence of events that led to Cook's 9-1-1 call; the relevant technical limitations on cellular technology and how those limitations affected the ability of the City of Dallas's 9-1-1 call center to handle Cook's call; and relevant expert testimony on the interplay between cellular technology and the City's technology. The common issues of law include each party's responsibilities and duties to Cook and the Cook plaintiffs as well as immunity issues among the City of Dallas, its employees, and the Telecommunications defendants. Notably, the Cook plaintiffs apparently thought that there were sufficient common issues of law and fact so as to attempt to file their third amended complaint in *Cook I*, which included their claims against the Telecommunications defendants, before it was stricken by the district court and they filed it as a new action, *Cook II*.